IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 122 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court, at 1231 MDA 2015, dated June |
| | : | 1, 2016 (reargument denied August 11, |
| v. | : | 2016), Affirming the Order of the |
| | : | Lancaster County Court of Common |
| | : | Pleas, Criminal Division, at No. CP-36- |
| ERIC JAY LEED, | : | CR-0002136-2014, dated July 16, 2015. |
| | : | |
| Appellant | : | ARGUED:  November 29, 2017 |

**OPINION**

**JUSTICE MUNDY**                                            **DECIDED: June 1, 2018**

We granted allowance of appeal in this case to resolve a dispute over an affidavit of probable cause used in support of a search warrant application.  Specifically, we consider whether a statement contained in one paragraph, which when read in the context of the whole affidavit appears to be an inadvertent error, renders the affiant's information stale, and therefore lacking in probable cause.  We conclude it does not.

I.

A.

In September 2012, Detective Anthony Lombardo of the Lancaster County Drug Task Force spoke to a confidential informant (CI #1).  CI #1 informed him that Appellant, Eric Jay Leed, was in the business of selling large quantities of powder cocaine and marijuana in the City of Lancaster.  CI #1 had recently purchased cocaine from Leed and knew he resided at 1223 Union Street in Lancaster.  In February 2014, Detective

Gregory Macey met with his own CI (CI #2), who also said Leed was selling powder cocaine and marijuana. Both CIs identified Leed from a PennDOT photograph. Drug Enforcement Administration (DEA) agents spoke with a third individual, a private citizen, who told them Leed had been making trips to Unit 503 at Lanco Mini Storage in Lancaster. The DEA agents verified through Lanco's manager that Leed was the only lessee of Unit 503 since August 2013, and that Leed last visited the unit on March 20, 2014. At some point, Detective Lombardo requested that a K9 Unit conduct a sweep outside of Unit 503. The drug detection dog gave a positive response.

Detective Lombardo applied for a search warrant of the storage unit. The heart of the instant dispute concerns Detective Lombardo's affidavit of probable cause, which stated, in relevant part, as follows.

> 3. That during the month of September 2012, your Affiant spoke with a Reliable Confidential Informant (CI#1), whose information has led to at least (2) prior arrests and convictions for felony violations of the PA Controlled Substance, Drug, Device, and Cosmetic Act. CI#1 related that he/she has knowledge of a white male, named Eric Leed, who is in the business of selling large amounts of powder cocaine and Marijuana in the Lancaster City area. CI#1 additionally related that Leed lives at 1223 Union St. Lancaster. CI#1 knew this information to be true because he/she had purchased cocaine from Leed as recently [as] September 2012. CI#1 has demonstrated his/her knowledge of controlled substances, to specifically include cocaine and Marijuana, its packaging, pricing and terminology.
>
> 4. That during the month of September 2012, your Affiant obtained a PENNDOT photograph of Eric J. Leed (DOB: 06-21-1983). Your Affiant showed the PENNDOT photograph to CI#1. CI#1 positively identified the photograph as being [the] same individual known to him/her as described in paragraphs # 3.
>
> 5. That during the month of February 2014, Det. Gregory Macey of the Lancaster County Drug Task Force, spoke with a Reliable Confidential Informant (CI#2), whose information has led to at least (1) prior arrest and conviction for felony

violations of the PA Controlled Substance, Drug, Device, and Cosmetic Act. CI#2 related that he/she has knowledge of a white male, named Eric Leed, who is in the business of selling large amounts of powder cocaine and Marijuana. CI# 2 has demonstrated his/her knowledge of controlled substances, to specifically include Cocaine and Marijuana, its packaging, pricing and terminology.

6. That during the month of February 2014, Det. Greg Macey of the Lancaster County Drug Task Force obtained a PENNDOT photograph of Eric J. Leed (DOB: 06-21-1983). Det. Macey showed the PENNDOT photograph to CI#2. CI#2 positively identified the photograph as being [the] same individual known to him/her as described in paragraphs # 5.

7. That during the month of March 2014, Agents from the Drug Enforcement Administration Harrisburg Resident Office spoke with a citizen in good standing within the community. The named citizen, who wished to remain anonymous, stated that Eric Leed was making frequent short term trips to storage unit #503 located within Lanco Mini Storage located at 1813 Old Philadelphia Pike, Lancaster, PA.

8. That on 21 March 2014, Michael Neff of the Drug Enforcement Administration spoke with the manager of Lanco Mini Storage. The manager advised that Eric Leed is the sole lessee of unit #503 at Lanco Mini Storage located at 1813 Old Philadelphia Pike, Lancaster, PA and has been so since renting the unit in August 2013. The manager further stated that the last time that Leed accessed the unit was on March 20, 2014.

9. That Off Billiter of the Manheim Township Police Department, attended a six week handler and K9 certification course in Canada conducted by Baden K9 in Apr–May 2008. Both handler and K9 receive re-certifications and twice monthly training. They have attended courses and certifications of both handler and K9 to include [a Baden K9 Patrol & Narcotics re-certification on December 9, 2008, and numerous other certifications between December 8, 2010, and February 24, 2012].

10. That *on March 21, 2013*, your Affiant requested Officer Billiter and his K9 partner Ruger, of the Manheim Twp Police Department to conduct [a] K9 sweep of unit # 503 at Lanco Mini Storage located at 1813 Old Philadelphia Pike,

Lancaster, PA for the presence of narcotics. At approx. 1644 hrs, Officer Billiter and K9 Ruger conducted a sweep of random storage units to include unit#503. Each and every time Ruger alerted on unit#503 and Officer Billiter advised your Affiant that K9 Ruger had alerted on the unit, indicating the presence of narcotics.

11. That your Affiant respectfully requests that a Search Warrant be granted for Unit# 503 located at Lanco Mini Storage, 1813 Old Philadelphia Pike[.]

Affidavit of Probable Cause, 3/21/14, at ¶¶ 3-11 (emphasis added).[1]

Detective Lombardo presented his search warrant application and affidavit of probable cause to a magisterial district judge on March 21, 2014. The magistrate approved and signed the warrant that same day. That evening, the police searched Leed's storage unit. Therein, the officers discovered 15 pounds of marijuana, $9,900.00 in currency, plastic bags, a scale, a bank statement, income tax return, and other personal documents. Based on the fruits of this search, the officers applied for and obtained an additional search warrant for Leed's bank records.

On March 31, 2014, Detective Lombardo filed a criminal complaint, charging Leed with one count of possession with intent to deliver (PWID).[2] Leed was arrested on April 2, 2014 and taken to the county prison. While in prison, authorities recorded a telephone conversation between Leed and his mother. Based on this phone conservation, as well as the results of the previous two searches, the police sought and obtained a third search warrant for Leed's mother's home. Therein, the police found a safe, which contained an additional $8,900.00 in currency and a mobile phone.

---

[1] Paragraphs 1 and 2 detailed Detective Lombardo's experience as a police officer and certain beliefs pertaining to how drug traffickers operate, and paragraph 9 contained expanded information about the drug detection dog's certification. This information is not germane to the instant dispute.

[2] 35 P.S. § 780-113(a)(30).

B.

On June 9, 2014, the Commonwealth filed an information, charging Leed with one count of PWID. On July 8, 2014, Leed filed an omnibus pre-trial motion. Relevant to this appeal, the motion sought suppression of the fruits from all three search warrants. Among other contentions, Leed alleged that the information contained within the first search warrant for his storage unit was stale and therefore lacking in probable cause. Leed's Omnibus Pre-Trial Motion, 7/8/14, at ¶ 15(b). Leed averred that because the affidavit on its face stated that police conducted a canine sniff on March 21, 2013, a year before the warrant was applied for, the warrant's information was stale, especially considering the same affidavit stated Leed did not rent the unit until five months later in August 2013. N.T., 11/24/14, at 3-4.

The trial court conducted a suppression hearing on November 24, 2014. The Commonwealth called Detective Lombardo to testify that the March 21, 2013 date in paragraph 10 was an error on his part. Leed objected on the basis that extrinsic testimony was not permitted, since challenges to search warrants are generally limited to the information contained within the four corners of the affidavit. *See generally* Pa.R.Crim.P. 203(D). Detective Lombardo proceeded to testify that the March 21, 2013 date was his drafting mistake, and the canine sniff was actually conducted on March 21, 2014, the same day he applied for the search warrant. N.T., 11/24/14, at 7. Leed did not present any evidence at the suppression hearing.

Following post-hearing briefing, the trial court issued an order and opinion denying Leed's motion to suppress on February 23, 2015. Therein, the trial court explained that it agreed with Leed that Rule 203(D) prohibits extrinsic testimony, so it disregarded Detective Lombardo's entire suppression hearing testimony. Trial Ct. Op., 2/23/15, at 7 n.5. However, on the merits, the trial court agreed with the

Commonwealth that a common sense reading of the affidavit as a whole permitted it to infer that the March 21, 2013 date was an error, and Detective Lombardo actually meant to state the canine sniff took place on March 21, 2014. It viewed this inference to be consistent with the principle that analyzing the existence of probable cause requires the trial court to look at "the totality-of-the-circumstances." *Id.* at 7. Because the trial court concluded that the March 21, 2013 date in paragraph 10 was listed in error, it further concluded the affidavit's information was not stale, and that there was probable cause to issue the warrant for the storage unit.

Leed proceeded to a stipulated bench trial on May 4, 2015, at the conclusion of which the trial court found Leed guilty of PWID. On July 16, 2015, the trial court imposed a sentence of 20 to 60 months' imprisonment. Leed did not file a post-sentence motion. That same day, Leed filed a timely notice of appeal.

C.

The Superior Court affirmed. In its view, Leed's staleness argument had merit if one were to read the probable cause affidavit and take paragraph 10 at face value, because the date of the canine sweep was a material fact in the overall probable cause determination. *Leed*, 142 A.3d at 26. However, the panel noted prior cases have permitted a finding of probable cause notwithstanding: (1) errors by the magistrate; (2) incorrect addresses; and (3) temporal omissions. *Id.* The court observed that probable cause affidavits are to be reviewed in a common sense and non-technical fashion. *Id.*

Turning back to this case, the panel reviewed each paragraph in the affidavit, noting the CIs' reports in 2012 and 2014, and Michael Neff of the DEA's conversation with the storage unit manager on March 21, 2014. *Id.* at 27-28. In the Superior Court's view, because, in general, the preceding paragraphs in the affidavit form a chronological narrative, it was reasonable for the trial court to conclude that the 2013 date typed in

paragraph 10, which deviated from that chronology, was an error by Detective Lombardo. *Id.* at 28. The panel viewed this conclusion as consistent with the common sense manner in which the affidavits should be viewed, and recognizing the general hurried fashion in which they often need to be prepared. *Id.* Based on these considerations, the Superior Court concluded the trial court correctly denied Appellant's motion to suppress. We granted allowance of appeal.

II.

A.

Leed maintains the Superior Court erred when it concluded the information contained in the probable cause affidavit was not stale. In his view, "[t]he Superior Court declined to acknowledge any 'meaningful legal distinction' between[: (a)] scenarios where an affidavit contains ambiguities or omissions requiring resolution prior to a probable cause determination, and [(b)] scenarios where an affidavit contains facts material to a finding of probable cause that require alteration prior to a probable cause determination." Leed's Brief at 14. Leed characterizes the action of the magistrate as considering the affidavit and application on its face and granting the warrant on the front end, pre-search. He further characterizes the action of the trial court as making changes to the affidavit on the back end, post-search, in an effort to render the search constitutionally permissible. *Id.* at 37-38.

Leed avers there are several problems with the lower courts' approach. First, Leed posits that the courts below violated Rule 203(D), which only permits viewing the affidavit and application on its face, and prohibits consideration of any outside evidence. *Id.* at 18, 21. Leed reiterates that he has never claimed that the affidavit contains an omission and he has never attacked its veracity. *Id.* at 16-17. Second, Leed highlights a purported disconnect in the Superior Court's analysis. The panel explicitly

acknowledged that the officer, the ADA, and the magistrate all failed to recognize the incongruity of the 2013 date in paragraph 10. *Id.* at 22. However, according to Leed, one can only conclude they failed in such recognition if one assumes the entry was erroneous. *Id.*

Leed continues that the Superior Court and the trial court, by correcting the defect in the affidavit, invite arbitrary judicial decision-making in post-search proceedings. *Id.* at 34-35. Leed highlights that the post-search court's role is to review the affidavit, not make changes to it post-hoc. *Id.* at 36. Specifically, he argues it is circular logic for the Superior Court to essentially "fix" the warrant to make it support probable cause, because the need for a "fix" implicitly concedes that the application actually presented to the magistrate did not support probable cause in the first place. *Id.* at 37.

Finally, Leed claims that, although this case presents a difference of one numeral in one year, there could be bigger mistakes in an affidavit, and the Superior Court does not articulate any limiting principles on this correction power. Leed poses hypothetical examples, such as, where an affidavit mistakenly alleges a drug sale occurred "two months" earlier versus "two weeks," or whether an affidavit mistakenly alleged drug sale occurred in "May" rather than "March." *Id.* at 39. Leed posits that without any guideposts directing how reviewing courts may engage in this mode of analysis, "reviewing courts would be granted arbitrary and unfettered discretion to insure the existence of probable cause within documents that were originally incapable of doing so." *Id.* Leed also asserts the courts' approach in this case is unfair because the only thing that prompted the courts to make the substitution here was the fact that Leed specifically challenged the lack of probable cause because of facial insufficiency of the affidavit. *Id.* at 45-46.

The Commonwealth counters that the Superior Court correctly applied the common sense, totality-of-the-circumstances review to conclude the magistrate properly issued the search warrant. The Commonwealth avers that Leed's approach requires the trial court and the Superior Court to engage in a "hyper-technical editorial review" of all probable cause affidavits. Commonwealth's Brief at 9. It continues that the trial court does not review an affidavit de novo, rather it exercises its duty "to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Leed*, 142 A.3d at 27 (brackets, ellipses, internal quotation marks and further citation omitted).

In this case, the Commonwealth reiterates that the reviewing courts looked at all of the affidavit's paragraphs, in their totality, noting their chronology. When viewed through this lens, the Commonwealth posits that the temporal flow of the affidavit's paragraphs leads the reader to the conclusion that the "2013" year in paragraph 10 was Detective Lombardo's drafting error and the most common sense reading of the entire affidavit is that the detective intended to state "2014." Commonwealth's Brief at 11-12.

Lastly, the Commonwealth maintains that neither the trial court nor the Superior Court violated Rule 203(D) because neither court relied on Detective Lombardo's hearing testimony. *Id.* at 17 (quoting Trial Ct. Op., 2/23/15, at 7 n.5). The Commonwealth also argues that the reviewing courts did not engage in speculation as Leed suggests. Rather, in the Commonwealth's view, "the trial court understood that the events in the paragraphs preceding the canine sniff, and other facts in the application and affidavit, allowed the trial court to determine that the issuing authority had not noticed the . . . error." *Id.* at 18 (quoting Trial Ct. Op., 2/23/15, at 11).

B.

The Fourth Amendment states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.[3]

The Fourth Amendment, by its text, has a strong preference for searches conducted pursuant to warrants. *See id.*; *cf. Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (stating, "[i]n the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."). "Such a warrant ensures that the inferences to support a search are drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Riley*, 134 S. Ct. at 2482 (internal quotation marks and citation omitted). It is hornbook law that search warrants may only issue upon probable cause and "[t]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits." Pa.R.Crim.P. 203(B). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Johnson*, 42 A.3d 1017, 1031 (Pa. 2012) (internal quotation marks and citation omitted). The affidavit of probable cause "must provide the magistrate with a substantial basis for determining the existence of probable cause[.]" *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

In addition, the "[a]ge of the information supporting a warrant application is a factor in determining probable cause." *Commonwealth v. Hoppert*, 39 A.3d 358, 363

---

[3] Article I, Section 8 of the Pennsylvania Constitution also prohibits unreasonable searches and seizures. However, Leed has not raised any argument that the Pennsylvania Constitution provides any heightened protections in this specific area. We therefore do not engage in any independent state constitutional analysis.

(Pa. Super.) (citation omitted), *appeal denied*, 57 A.3d 68 (Pa. 2012). "If too old, the information is stale, and probable cause may no longer exist." *Id.* However, staleness is not determined by age alone, as this would be inconsistent with a totality of the circumstances analysis. *Id.*

After a search warrant is issued, and the search conducted, an aggrieved defendant may file a motion to suppress evidence on the basis that the search warrant lacked probable cause. *See generally* Pa.R.Crim.P. 581. The burden is on the Commonwealth to show that the magistrate had a substantial basis for concluding probable cause existed. *Id.* at 581(H), cmt.; *Gates*, 462 U.S. at 238-39; *Commonwealth v. Enimpah*, 106 A.3d 695, 703 (Pa. 2014). As Leed correctly points out, Rule 203(D) unequivocally states, "[a]t any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in [Rule 203](B)." Pa.R.Crim.P. 203(D).

The Supreme Court of the United States has instructed "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236. Indeed, a magistrate's probable cause determination should receive deference from the reviewing courts. *Id.* In keeping with the Fourth Amendment's strong preference for warrants, "courts should not invalidate . . . warrants by interpreting affidavits in a hyper[-]technical, rather than a commonsense, manner." *Id.* (some brackets omitted). With this legal background in mind, we turn to the question presented in the instant case.

III.

A.

At the outset, we observe that the issue before us is not whether "March 21, 2014" versus "March 21, 2013" is more logical or a more correct reading of the probable cause affidavit as a whole. Rather, the discrete issue before this Court is whether the Fourth Amendment permitted the reviewing courts to make that conclusion, when the affidavit on its face stated the date of the canine sniff was "March 21, 2013."[4]

Although the instant case presents a question of first impression in Pennsylvania, we do not write on a completely blank slate. As the Superior Court pointed out, Pennsylvania courts have previously addressed other forms of errors contained within affidavits of probable cause. *See Leed*, 142 A.3d at 26 (collecting cases). We focus our discussion on cases that involve affirmative errors in affidavits of probable cause, rather than omissions. To this end, we look for guidance to cases that have considered the effect of providing an incorrect address in an affidavit.

B.

1.

In *Commonwealth v. Washington*, 858 A.2d 1255 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1126 (Pa. 2005), the police were investigating Washington for selling crack cocaine out of his apartment in Homestead, Pennsylvania. After corroborating an informant's tip by conducting surveillance and a "trash pull," the police applied for a warrant to search Washington's apartment.[5] The search warrant listed the place to be searched as "123 West Locust Way" whereas Washington's apartment's postal address

---

[4] Whether the Superior Court's rule is constitutional under the Fourth Amendment presents a question of law, over which our standard of review is de novo. *Commonwealth v. Livingstone*, 174 A.3d 609, 619 (Pa. 2017) (citation omitted).

[5] A trash pull is "[t]he investigation of discarded trash from a residence." *Washington*, 858 A.2d at 1255 n.5.

is "123 West Tenth Avenue, rear."[6]  *Id.* at 1256.  Washington challenged the search warrant as invalid since it stated the incorrect address on its face.

The Superior Court concluded that the search warrant was valid.  The court reasoned that, although the listed postal address was an error on the part of the affiant officer, "there was no ambiguity about the location of the residence to be searched and that, indeed, criminal activity was afoot at that location[.]"  *Id.* at 1258.  The panel's opinion, authored by now-Justice Todd, observed there was no dispute that the police entered the residence they intended to search" and to hold the search warrant invalid "would elevate form over substance."  *Id.*  Based on these considerations, the Superior Court held the search warrant comported with the particularity requirement.  *Id.*; *see also Commonwealth v. Belenky*, 777 A.2d 483, 487 (Pa. Super. 2001) (concluding search conducted at "4251 Frankford Avenue" pursuant to a search warrant for "4252 Salem Street" was valid "where there was no ambiguity about the location where the criminal activity occurred, as well as no question that probable cause for the search existed at the location that was searched").  The Superior Court's decision is consistent with those of various federal Courts of Appeals. *United States v. Crumpton*, 824 F.3d 593, 612 (6th Cir. 2016) (stating that an incorrect address "does not invalidate a search warrant if the warrant includes other specific descriptors that remove the probability that the wrong location could be searched, especially when the warrant affiant participates in the execution of the search."); *United States v. Holley*, 638 F. App'x 93, 97 (2d Cir. 2016) (stating, "[w]arrants have been upheld despite technical errors, such as an incorrect street address, when the possibility of actual error is eliminated by other

---

[6] There is a separate residence in Homestead at "123 West Locust Way."  The Superior Court also noted that the entrance to Washington's apartment faced Locust Way. *Washington*, 855 A.2d at 1256.

information, such as a detailed physical description in the warrant itself.") (internal quotation marks, brackets, and citation omitted).

2.

We acknowledge that the errors in *Washington* and this case implicate different aspects of the Fourth Amendment's warrant requirement. As noted above, *Washington* pertained to particularity of the place to be searched, whereas this case pertains to the alleged staleness of the affidavit's information. Additionally, *Washington* involved an officer's mistaken belief, whereas this case involves a drafting error. Nevertheless, we see a parallel between cases upholding search warrants containing an erroneous assignment of a postal address and the instant case involving an error entering a date.

Taking *Washington* as an example, the search warrant at issue sought to search "123 West Locust Way." Reading the application on its face as written, there certainly would not be probable cause to search the residence of the person who actually resides at that address, because, presumably, that innocent party had nothing to do with Washington's drug operation. However, consistent with the views of the federal courts of appeals, search warrants may still be valid as long as other indicators therein remove the possibility of the police intruding into the wrong area. *See Crumpton*, 824 F.3d at 612; *Holley*, 638 F. App'x at 97. In *Washington*, the Superior Court noted that the affiant officer was present at the search itself, and that the affiant described conducting surveillance on a specific structure and conducting a trash pull from that structure. *Washington*, 858 A.2d at 1255-56. Therefore, certain specific indicia existed that guarded against the possibility that the police were going to search the wrong residence.

In our view, the same type of rule should apply to errors in an affidavit implicating the ripeness of the information supporting probable cause. The warrant requirement

and attendant review by a magistrate are meant to ensure that police do not act arbitrarily or without sufficient information to justify intrusion into a constitutionally protected area. Search warrant affidavits can sometimes be quite long, spanning pages detailing the extent of the officers' investigation up to that point in time. It would indeed be elevating "form over substance" to permit one error in one paragraph to spill over and void all of the other information contained within the additional paragraphs. This is especially true here, where the specific temporal indicia contained in the other paragraphs eliminated any reasonable possibility the officers wrongfully searched Leed's constitutionally-protected area based on stale information. *See Holley*, 638 F. App'x at 97.

We stress that both the magistrate in his or her pre-search determination, and the trial court in its post-search review must read probable cause affidavits in a common sense fashion to ascertain whether probable cause exists.[7] *Gates*, 462 U.S. at 239. However, this does not permit either court to engage in speculation or conjecture, as the burden rests entirely upon the Commonwealth. *Id.* at 581(H), cmt.; *Gates*, 462 U.S. at 238-39; *Enimpah*, 106 A.3d at 703. We believe that the rule we adopt must accommodate the common sense mode of review and also must prevent courts from engaging in speculation. Therefore, we hold that where the substance of an affidavit, read as a whole, evidences that there is a substantial likelihood that a specific paragraph contains an error, such that any reasonable possibility that the police will act without the requisite probable cause is eliminated, the error will not be viewed in

---

[7] We do not mean to suggest, as the Commonwealth does, that reading the affidavit as written and sworn to by the officer is somehow "hyper-technical." Commonwealth's Brief at 9.

isolation and the warrant will be deemed valid, as long as the probable cause affidavit is otherwise sufficient.[8]

3.

Our rule is consistent with the very cases cited by Leed in his brief. Leed relies heavily on the Court of Appeals of Maryland's decision in *Greenstreet v. State*, 898 A.2d 961 (Md. 2006), which addressed this same question.[9] In *Greenstreet*, the police applied for a search warrant for Greenstreet's residence on April 15, 2004. The affidavit of probable cause as written stated that on April 14, *2003*, officers conducted a trash pull at Greenstreet's address. *Id.* at 965. The seized trash bags contained several smaller bags containing residue that the officers recognized to be from marijuana and cocaine. *Id.* at 965-66. No other part of the affidavit gave any specific chronology as to when the police conducted any other investigatory activity. The State conceded that the affidavit's information was stale on its face and lacking in probable cause, but asserted the "2003" date was an error, and the officer meant to write the trash pull date as "April 14, 2004." *Id.* at 966-67. The reviewing circuit court agreed with Greenstreet, concluding the affidavit's information was stale and granted his motion to suppress. The Court of Special Appeals reversed, crediting the State's argument that the magistrate could have found probable cause, notwithstanding the error. *Greenstreet v. State*, 875 A.2d 177 (Md. Ct. Spec. App. 2005), *rev'd*, 898 A.2d 691 (Md. 2006).

---

[8] Of course, if the affidavit is susceptible to two or more readings that are in equipoise, then the Commonwealth has not met its burden to show probable cause existed by a preponderance of the evidence. *See generally Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012) (stating, "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights.").

[9] The Court of Appeals is the highest court in Maryland.

Upon further appeal, the Court of Appeals unanimously reversed. Relevant to this case, the court noted that issuing magistrates generally "are permitted to grasp . . . errors, interrogate the affiant about the true facts, and correct the affidavit with the signature or initials of the affiant[,]" which did not occur in Greenstreet's case. *Greenstreet*, 898 A.2d at 972. The Court of Appeals noted several cases relied upon by the State that "stand for the proposition that where a factual date in the affidavit material to the probable cause finding is an apparent typographical error because it is contradicted by another factual time or date more likely to be true, also contained within the four corners of the affidavit, then a reviewing court may infer that a typographical error was made by the affiant and treat it as something other than what was written in the affidavit." *Id.* at 973 (collecting cases). The high court did not dispute the validity of those cases, but concluded Greenstreet's case was distinguishable, because "the affidavit in this case [did not] present[] enough internal, specific, and direct evidence from which to infer a clear mistake of a material date upon which the affiant police officer depended for probable cause." *Id.* at 973-74. The affidavit at issue "suggest[ed] the criminal activity of illegal drug distribution from [Greenstreet]'s residence, but provides evidence of that activity on only one occasion—the trash seizure and search on 14 April 2003." *Id.* at 976. In the Court of Appeals' view, the affiant officer's purported date error was fatal because "the affidavit . . . [did] not contain multiple dates of observed drug buys at Greenstreet's home or surveillance over a period of time." *Id.* Therefore, the court concluded the circuit court properly granted Greenstreet's motion to suppress.

Contrary to Leed's assertion, *Greenstreet* actually supports the rule we adopt today. The Maryland high court drew a line between affidavits that include only one specific date, which, if stale, would be insufficient to establish probable cause, and an

"affidavit [that] presents enough internal, specific, and direct evidence from which to infer a clear mistake of a material date upon which the affiant police officer depended for probable cause." *Id.* at 973-74. In the latter case, the warrant may still be valid.[10] This reasoning is consistent with the rule we announce in this case.[11] In addition, this addresses Leed's concerns in his brief as to a lack of limiting principle.

## C.

In our view, the rule we adopt today has several policy advantages as well. As noted above, the Fourth Amendment contains a strong preference for searches conducted pursuant to warrants issued by a neutral judicial officer. This is to prevent the probable cause inquiry from being solely adjudged by those who have a discrete governmental stake in enforcing the criminal law. *See, e.g.*, *Coolidge v. New*

---

[10] Consistently with this case, the court also concluded the circuit court correctly prohibited the State from presenting testimony to show the year was entered as a typographical error. *Greenstreet*, 898 A.2d at 972. Although Leed maintains that the courts below considered Detective Lombardo's suppression hearing testimony, in violation of Rule 203(D). We disagree. To the contrary, the courts maintain they did not consider the testimony, and our review of the record gives us no cause to doubt the lower courts in this regard.

We recognize that the Superior Court's labeling of this as a "factual finding" could be problematic. *See Leed*, 142 A.3d at 25. After all, a consideration of Rule 203(D) is that the reviewing courts are generally confined to the four corners of the affidavit and are not supposed to be making any factual findings. However, we view what the courts below did to be making a determination regarding the preparation of the probable cause affidavit itself based on its own terms, as opposed to factual findings about the police investigation.

[11] Several other states have drawn the same distinction as we do in this case. *See State ex rel. Collins v. Super. Ct. of Ariz.*, 629 P.2d 992, 994-95 (Ariz. 1981); *People v. Lubben*, 739 P.2d 833, 836 (Colo. 1987); *State v. Rosario*, 680 A.2d 237, 240-41 (Conn. 1996); *Baker v. Commonwealth*, 264 S.W. 1091, 1092 (Ky. 1924); *State v. White*, 368 So. 2d 1000, 1002 (La. 1979); *State v. Chandler*, 895 P.2d 249, 256 (N.M. Ct. App. 1995), *cert. denied*, 894 P.2d 394 (N.M. 1995); *State v. Gomez*, 813 P.2d 567, 569 (Or. Ct. App. 1991); *Lane v. State*, 971 S.W.2d 748, 753-54 (Tex. Ct. App. 1998); *State v. Mitchell*, 318 P.3d 238, 242-43 (Utah Ct. App. 2013); *State v. Vickers*, 59 P.3d 58, 68 (Wash. 2002).

*Hampshire*, 403 U.S. 443, 450 (1971) (plurality) (holding that a search warrant issued by the state attorney general, acting as a justice of the peace, was invalid, since "prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the 'competitive enterprise' that must rightly engage their single-minded attention").

We expect law enforcement to be specific when presenting affidavits to issuing magistrates, especially since the Rules of Criminal Procedure require certain levels of specificity. *See generally* Pa.R.Crim.P. 205(A). We further expect magistrates to carefully review search warrant applications, and we agree with the Maryland Court of Appeals that magistrates "are permitted to grasp . . . errors, interrogate the affiant about the true facts, and correct the affidavit with the signature or initials of the affiant." *Greenstreet*, 898 A.2d at 972. In our view, allowing one temporal misstatement to triumph over other chronological averments, with which it is at odds in the affidavit, could discourage officers from providing specifics for fear that, if they are too specific and misstate one detail, the entire warrant will be invalidated. It could also discourage officers from seeking warrants altogether, "with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search." *Gates*, 462 U.S. at 236.

The rule we adopt today vindicates several Fourth Amendment interests. It continues to channel searches into the warrant process. It encourages officers to be more specific, because if an inadvertent error is made in one detail, the remaining details contained in the affidavit as a whole may prevent invalidation of the officer's work. By contrast, if the officer is not specific enough and makes an error, as in *Greenstreet*, our rule keeps that risk and burden where it belongs, on the Commonwealth. *See* Pa.R.Crim.P. 581(H); *Wallace*, 42 A.3d at 1047-48.

IV.

Accordingly, we conclude the trial court in this case did not err when it held that the magistrate had a substantial basis for approving the search warrant. As noted by the Superior Court, there were several temporal guideposts throughout the entire affidavit. Paragraphs 3 and 4 of the affidavit refer to CI #1's report in September 2012. Affidavit of Probable Cause, 3/21/14, at ¶¶ 3-4. Paragraphs 5 and 6 refer to CI #2's reports from February 2014. *Id.* at ¶¶ 5-6. Paragraph 7 refers to the known citizen's information given in March 2014. *Id.* at ¶ 7. Paragraph 8 states that Detective Lombardo spoke to the facility manager on March 21, 2014 to confirm that Leed had rented Unit 503 since August 2013. *Id.* at ¶ 8. It also states that Leed last accessed the unit on March 20, 2014. *Id.* Paragraph 10 states the canine sweep occurred on March 21, 2013. *Id.* at ¶ 10. Finally, we observe that the search warrant application itself was presented to the magistrate and approved on March 21, 2014. Search Warrant TF-0071-14, 3/21/14, at 1.

Applying the above-announced rule, we conclude that the affidavit, when read in its totality, contained "enough internal, specific, and direct evidence from which to infer a clear mistake of a material date upon which the affiant police officer depended for probable cause[.]" *Greenstreet*, 898 A.2d at 973-74; *accord Crumpton*, 824 F.3d at 612; *Holley*, 638 F. App'x at 97. The affidavit's substantive paragraphs detail specific chronological steps taken by Detective Lombardo and other officers in their investigation, leading up to the canine sweep and the seeking of the contested search warrant. The CIs' reports in 2012 and 2014, combined with the affidavit specifically stating that Detective Lombardo asked the manager on March 21, 2014 if Leed was the renter of Unit 503, and that Leed accessed the unit on March 20, 2014, give rise to the inference that paragraph 10's listing of March 21, 2013 was an inadvertent error. As a

result, there was a substantial basis for the magistrate to have found probable cause existed, notwithstanding Detective Lombardo's mistake.[12]

V.

Based on the foregoing, we conclude the search warrant in this case was not based on stale information, and was supported by probable cause. Therefore, we further conclude that Leed's Fourth Amendment rights were not violated. Accordingly, the order of the Superior Court is affirmed.

Justices Baer, Dougherty and Wecht join the opinion.

Chief Justice Saylor files a dissenting opinion in which Justices Todd and Donohue join.

Justice Donohue files a dissenting opinion.

---

[12] The dissents agree with the rule we adopt, but not its application to this case. Dissenting Op. of Saylor, C.J. at 1; Dissenting Op. of Donohue, J. at 1. Chief Justice Saylor posits that "it is equally possible that the affiant mistakenly indicated that Appellant began renting in August *2013*, rather than August *2012*, a potential error which could also be viewed as aligning with CI#1's claim that Appellant sold large quantities of drugs around that time, *i.e.*, September 2012." Dissenting Op. of Saylor, C.J. at 4. However, the parties only disagree over paragraph 10's date of March 21, 2013; Leed does not dispute that he first rented the storage unit in August 2013. Leed's Brief at 2, 13. Moreover, looking at each individual date contained in the affidavit on its own is inconsistent with the totality of the circumstances approach under which probable cause affidavits should be generally viewed. *Gates*, 462 U.S. at 230-31.