J-A23018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TODD ANTHONY GRACEY | : | |
| | : | |
| Appellant | : | No. 801 MDA 2021 |

Appeal from the Judgment of Sentence Entered June 16, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003213-2018

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED:  MARCH 6, 2023**

Todd Anthony Gracey (Appellant) appeals from the June 16, 2021, judgment of sentence entered in the York County Court of Common Pleas after a jury convicted him of multiple offenses, including homicide by vehicle while driving under the influence (DUI), homicide by vehicle, and two counts of DUI (general impairment and highest rate of alcohol).[1]  On appeal, he argues the trial court erred in refusing to suppress evidence obtained from a blood draw. We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3735(a), 3732(a), 3802(a)(1), (c).

Appellant's convictions stem from a single motor vehicle accident[2] that occurred on October 1, 2017, at approximately 7:00 p.m., on a "straight" portion of Blooming Grove Road in Cordorus Township, York County, Pennsylvania. *See* N.T. at 13, 16. Pennsylvania State Trooper Thomas Stevenson arrived on the scene and observed a red Chevrolet truck with heavy damage, upside down, and blocking the lane of travel.[3] *Id.* at 14. The trooper saw the driver, Appellant, and a female passenger, who was pronounced deceased at the scene, being extricated from the vehicle by emergency responders. *Id.* Because of his injuries, Appellant was immediately flown to York Hospital for medical treatment. *Id.* at 23. The trooper did not have the opportunity to talk to or observe Appellant at the scene. *Id.* at 15. He did

---

[2] The tire marks on the road revealed the vehicle "traveled abruptly from the right lane to the left lane before it left the roadway and struck a tree[.]" N.T., 8/28/18, at 16.

[3] Trooper Stevenson subsequently spoke with a witness that was traveling in the opposite direction of Appellant. *See* N.T. at 18. The witness stated "the involved vehicle swerved abruptly across the road from the right lane to the left lane where it struck the trees and went up the embankment and rolled . . . approximately twice before landing on its roof." *Id.* Another witness told the trooper:

> [T]he involved vehicle was behind her and . . . that this vehicle was tailgating her so closely that she could not see the head lamps. [The witness] also related that the vehicle was weaving and the actions of the driver caused concern for her and her kids, so she actually pulled off the road to allow the operator to pass.

*Id.* at 18-19.

recall seeing "beer cans strewn across the crash scene and . . . some beer cans inside the vehicle[,]" and "[s]ome of the beer cans were still in koozies." *Id.* at 17.

At the hospital, employees obtained a sample of Appellant's blood.[4] Two days after the incident, Trooper Stevenson requested a search warrant seeking the "legal blood belong to [Appellant] drawn by York Hospital Staff as part o[f] normal emergency procedures." Application for Search Warrant & Authorization (Search Warrant), 10/3/17, at 1 (unpaginated). Attached to the search warrant was the affidavit of probable cause, which provided the following information:

> On 10/01/17, I was working routine patrol in marked patrol vehicle H7-03. I was dispatched to a crash that occurred at approximately [7:11 p.m.] on 8261 Blooming Grove Rd, just east of Glenville R[oad .] Upon my arrival to scene, the operator was being assisted by medical personnel, but he was identified as [Appellant]. Due to the seriousness of [Appellant]'s injuries and because he was immediately taken from the scene and flown to York Hospital for treatment, I was not able to have a real conversation with [him]. The passenger in the vehicle was pronounced deceased on [the] scene.
>
> I observed the vehicle [Appellant] was driving to be a red Chevrolet Silverado[.] The Silverado was currently sitting upside down on its roof blocking the westbound lane of travel. The roof was severely caved in especially on the passenger's side of the vehicle and the vehicle had sustained serious damage throughout. While on scene, I observed numerous Bud Light cans scattered across the crash scene. Inside the vehicle, I observed numerous

---

[4] The record does not indicate the reason why the hospital collected the blood sample. Nevertheless, no one disputes the fact that hospital personnel performed the blood draw before receiving a request from Trooper Stevenson.

- 3 -

Bud Light cans scattered throughout the vehicle, including some Bud Light cans still in koozies.

[Another state trooper] responded to the York Hospital to request a blood draw from [Appellant], but [he] was currently intubated. As part of [Appellant]'s treatment the York Hospital Staff drew Legal Blood from [him] as a part of normal emergency procedures.

Based upon the foregoing, your affiant has probable cause to believe that [Appellant] was operating a motor vehicle under the influence of . . . alcohol.

Your affiant requests a search warrant to seize [Appellant]'s blood from the York Hospital Laboratory to submit to NMS Labs for toxicological testing in order to determine the presence and or level of any impairing substance, i.e. alcohol and or drugs contained therein.

*Id.* at 2 (unpaginated). A magisterial district judge granted the search warrant that same day. *See id.* at 1. The warrant was then executed, and Appellant's blood was submitted for testing. *See* N.T. at 21. The results revealed that Appellant's blood alcohol content (BAC) was .243%. *Id.*

Appellant was charged with homicide by vehicle while DUI, homicide by vehicle, DUI (general impairment — first offense), DUI (highest rate of alcohol — first offense), recklessly endangering another person (REAP),[5] driving on roadways laned for traffic, following too closely, driving vehicle at a safe

---

[5] 18 Pa.C.S. § 2705.

speed, careless driving, careless driving resulting in unintentional death, reckless driving, and failure to use restraint system.[6]

On July 30, 2018, Appellant filed an *omnibus* pre-trial motion, seeking suppression of the blood test results. Specifically, he claimed the search warrant "lacked the requisite probable cause" and Trooper Stevenson "failed to articulate any facts that would lead a reasonable person to believe that [Appellant] had been driving under the influence at the time of the motor vehicle accident." Appellant's Omnibus Pre-Trial Motion for the Suppression of Evidence (Motion to Suppress), 7/27/18, at 2, 4. Moreover, he argued:

> 14. In the current case, the Affidavit of Probable [C]ause merely indicate[d] there was a motor vehicle crash, identifie[d] [Appellant] as the operator, and that there were numerous Bud Light cans scattered across the crash scene and scattered throughout the vehicle.
>
> 15. There [was] no description of the manner in which [Appellant] was operating the vehicle prior to the accident.
>
> 16. No information regarding the crash scene [was] provided indicating what the conditions and road conditions were at the time of the accident or if the accident occurred where there was a sharp curve.
>
> 17. The officer [did] not indicate whether there was an odor of alcohol coming from [Appellant]'s person or from within the vehicle itself.
>
> 18. No information [was] provided to indicate whether emergency personnel that were assisting [Appellant] on scene detected the odor of alcohol upon [his] breath, person, or clothing.

---

[6] 75 Pa.C.S. §§ 3309(1), 3310(a), 3361, 3714(a), (b), 3736(a), 4581(a)(2)(ii).

19. There [was] no mention that any of the Bud Light cans found on scene or within the vehicle were open and/or empty.

*Id.* at 3-4 (unpaginated).

The trial court held a suppression hearing on August 28, 2018. The Commonwealth presented the testimony of Trooper Stevenson. At the conclusion of the proceeding, the court made the following determination:

> . . . I have read and received this affidavit of probable cause . . ., I believe that constitutes probable cause sufficient for the issuance of the search warrant.
>
> [Appellant] was the driver of a motor vehicle that ran into a tree in York County, PA. Scattered throughout the vehicle inside and out were a number of beer cans, some of which were empty, half full, certainly some of them had been opened, and two of them had koozies around them. And if I had come upon that scene and seen that, I would say that driver was probably under the influence of alcohol.

N.T. at 32. That same day, the court entered an order denying Appellant's motion to suppress.

The matter than proceeded to a jury trial, and on April 30, 2021, the jury returned a verdict of guilty on all above-mentioned charges. Subsequently, on June 16, 2021, the court sentenced Appellant to a term of three to six years' incarceration for the homicide by vehicle while DUI conviction, and a concurrent term of one to two years' imprisonment for the

homicide by vehicle offense.[7]  Appellant did not file a post-sentence motion but did file this timely appeal.[8]

Appellant raises the following claim for our review:

Whether the application for a search warrant seeking the blood of . . . Appellant contained insufficient information within its four corners to support a finding of probable cause?

Appellant's Brief at 4.

In his sole issue on appeal, Appellant asserts the October 3, 2017, search warrant "contained insufficient information to support a determination of probable cause."  Appellant's Brief at 10.  He alleges the "application was woefully incomplete and vague" and "incorrectly relied upon information elicited outside of the four corners of the warrant."  *Id.*  Moreover, he states the affidavit of probable cause lacked "a determination of probable cause that any crime occurred, including, but not limited to, the offense of driving under the influence of alcohol."  *Id.* at 14.  He points to the following to support his argument: (1) there was "no information provided regarding the nature and cause of the . . . accident[;]" (2) Trooper Stevenson did not provide any information regarding "the possible impaired driving of the operator" where

_____

[7] The two DUI convictions merged for sentencing purposes, and the court did not impose any further penalty with respect to his remaining convictions.

[8] Appellant complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  On September 14, 2021, the court issued a Pa.R.A.P. 1925(a) opinion.

the affidavit "merely suggest[ed] that the [t]rooper was dispatched to a crash that had occurred[;]" (3) the affidavit did not address "the actions, inaction[,] or the possible impairment of" Appellant; (4) the trooper failed "to describe any observations from law enforcement, first responders[,] or other witnesses that would be consistent with possible impairment including, but not limited to, the smell of alcohol, bloodshot or glass eyes, etc[;]" and (5) the trooper failed "to identify a witness to the accident, [Appellant]'s driving prior to the accident or even a remote assertion regarding the possible cause of the accident." *Id.* at 14-15.

Appellant further contends that the "only factual averment . . . that could remotely suggest the possession or use of alcohol is the Trooper's statement" regarding the numerous Bud Light cans at the accident scene. Appellant's Brief at 15. Nevertheless, Appellant submits this evidence carries little weight because "there [was] absolutely zero information provided regarding the age and/or relevant condition of said cans" and there was "no indication whether the cans were open, full, and/or warm or cold." *Id.* at 16. He avers: "Based upon the scant averments of the affidavit of probable cause, the beer cans at issue, even under an average, common-sense reading, could have been present in or around the Chevy Silverado for weeks, if not months, to this accident." *Id.*

Appellant also argues that the trial court failed to limit its review to the four corners of the search warrant by considering the "testimony of the

[trooper] regarding facts and circumstances not present within the warrant, which the court deemed 'credible[.]'" Appellant's Brief at 16. He references the court's statements at the suppression hearing regarding his truck hitting the tree and the presence of the beer cans. *Id.* at 17 n.1. Lastly, Appellant contends that since he "was never provided implied consent warnings nor did he ever voluntarily consent to a blood test[, t]he need for a warrant to extract and/or obtain his blood was absolute and conditioned upon a specific showing that there was a fair probability that contraband or evidence of a crime would be contained within the [blood]." *Id.* at 18. He concludes that since the assertions made by Trooper Stevenson were "nothing more than speculation and guesswork[,]" the warrant was improper and the seizure of his blood a "privacy intrusion[.]" *Id.*

When reviewing suppression decisions, our standard of review is limited.

> When reviewing an order denying a motion to suppress evidence, we must determine whether the evidence of record supports the factual findings of the trial court. In making this determination, this Court may only consider the Commonwealth's evidence and the defendant's evidence that remains uncontradicted. We view the Commonwealth's evidence, not as a layperson, but through the eyes of a trained police officer. We do not review the evidence piecemeal, but consider the totality of the circumstances in assessing whether probable cause existed. Additionally, it is exclusively within the province of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. If the evidence supports the findings of the trial court, those findings bind us and we may reverse only if the suppression court drew erroneous legal conclusions from the evidence.

*Commonwealth v. Gallagher*, 896 A.2d 583, 584-85 (Pa. Super. 2006) (quotation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Id.* at 585 (citation omitted).

The seizure and testing of a person's blood constitutes a search. *See Commonwealth v. Trahey*, 228 A.3d 520, 530 (Pa. 2020). "[W]here a blood draw is conducted for medical purposes, and the results of the blood test are obtained after proper execution of a search warrant, the results of the blood draw are admissible in the prosecution of a DUI defendant." *Commonwealth v. Miller*, 996 A.2d 508, 513 (Pa. Super. 2010). Here, as mentioned above, Trooper Stevenson requested and was granted a warrant to seize Appellant's blood sample.

As Appellant's argument pertains to the validity of the search warrant, we are guided by the following:

> The Fourth Amendment to the United States Constitution commands that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend IV. Similarly, Article I, Section 8 of the Pennsylvania Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." PA. CONST. art. I, § 8.

A search warrant may issue only upon a demonstration of probable cause by an affiant. *See generally Commonwealth v. Gary*, . . . 91 A.3d 102, 107 (Pa. 2014). The existence of probable cause is measured by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 . . . (1983). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he [or she] has reasonably trustworthy information are sufficient in and of themselves to warrant a [person] of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Johnson*, . . . 42 A.3d 1017, 1031 (Pa. 2012) (internal quotation marks and citation omitted).

A magisterial district judge, when deciding whether to issue a search warrant, must "make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (citation omitted). Conversely, "[a] court reviewing a search warrant determines only if a substantial basis existed for the magistrate to find probable cause." *Id.* (citation omitted). We also note that there is a strict particularity requirement in Article I, Section 8 of the Pennsylvania Constitution that "a warrant must describe the items as specifically as is reasonably possible." *Commonwealth v. Grossman*, . . . 555 A.2d 896, 899 (Pa. 1989); *see also* Pa.R.Crim.P. 205(2) (requiring all search warrants to "identify specifically the property to be seized"); *id.* at 205(3) (requiring all search warrants to "name or describe with particularity the person or place to be searched").

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1081-82 (Pa. 2017) (paragraph break added).

In terms of probable cause, we recognize:

"Probable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'" *Commonwealth v. Wright*, . . . 867 A.2d 1265, 1268 (Pa. Super.2005) (quoting *Commonwealth v. Romero*, . . . 673 A.2d 374, 376 ([Pa. Super.] 1996)). "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." *Commonwealth v. Monaghan*, 441 A.2d 1318 ([Pa. Super.]

1982) (citation omitted). ***See also*** . . . ***Gates***, 462 U.S. [at] 238 . . . (holding that probable cause means "a fair probability that contraband or evidence of a crime will be found."); ***Commonwealth v. Lindblom***, 854 A.2d 604, 607 (Pa. Super. 2004) (reciting that probable cause exists when criminality is one reasonable inference, not necessarily even the most likely inference). . . .

***Commonwealth v. Jones***, 121 A.3d 524, 528 n.5 (Pa. Super. 2015) (quotation omitted). Additionally, "[t]he Supreme Court of the United States has instructed that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. Indeed, a magistrate's probable cause determination should receive deference from the reviewing courts." ***Commonwealt v. Leed***, 186 A.3d 405, 413 (Pa. 2018) (internal citations and quotation marks omitted).

In finding there was probable cause to support the search warrant, the trial court recited the affidavit of probable cause and opined:

> A common sense assessment of all these circumstances set forth in the affidavit supports the conclusions that [Appellant] was the driver of the vehicle involved in the accident, and that he was driving under the influence of alcohol at the time of the accident. Therefore, and giving deference to the magistrate, there was a fair probability that evidence that [Appellant] was driving while under the influence of alcohol would be found in [his] blood. . . .

Trial Ct. Op., 9/14/21, at 4-5.

Our review of the certified record leads us to agree with the trial court that the affidavit, as a whole, provided the magistrate district judge with sufficient information to conclude there was a reasonable probability evidence from Appellant's blood would reveal he was driving under the influence. As

set forth in the Search Warrant, Trooper Stevenson was dispatched to a crash that occurred on Blooming Grove Road. *See* Search Warrant at 2 (unpaginated). The vehicle at issue was "sitting upside down on its roof blocking the westbound lane of travel[,] with "the roof was severely caved in especially on the passenger's side of the vehicle and the vehicle had sustained serious damage throughout." *Id.* The trooper observed Appellant being pulled from the driver's side and due to the seriousness of his injuries, he was flown to the hospital. *Id.* The passenger was pronounced dead at the scene. *Id.* Trooper Stevenson further "observed numerous Bud Light cans scattered across the crash scene [and] throughout the vehicle, including some Bud Light cans still in koozies." *Id.* As such, even though Trooper Stevenson did not witness the crash or observe Appellant's condition at the scene, "the factual and practical considerations" within the trooper's knowledge are sufficient in themselves to warrant an individual of "reasonable caution in the belief" that Appellant may have been driving under the influence of alcohol and that a blood draw was necessary. *See Jacoby*, 170 A.3d at 1081-82; *Jones*, 121 A.3d at 528 n.5. We reiterate: "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." *Monaghan*, 441 A.2d at 1320 (citation omitted).

Moreover, with respect to the state of the crash site and the beer cans found on the ground and in the truck, Appellant asks this Court to apply a hypertechnical approach and ignore the evidence because there was no

information in the search warrant as to the cause of the accident, "the age and/or relevant condition" of the cans, and "whether the cans were open, full, and/or warm or cold." Appellant's Brief at 14, 16. We decline to do so. We emphasize that the issuance of a search warrant is based on a "practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jacoby*, 170 A.3d at 1082 (citation omitted).

Here, the issuing judge authorized the search warrant based on reasonable inferences, including the fact that there were numerous beer cans in the truck, which indicated consumption from a practical standpoint. Moreover, it is evident from a "common sense" reading of these facts that there was a fair probability that Appellant was under the influence of alcohol when he drove his vehicle on the early evening of October 1, 2017. *See Jacoby*, 170 A.3d at 1082. Contrary to Appellant's argument, there is no evidence to suggest the issuing judge reviewed information outside of the search warrant. Rather, Appellant references statements made at the suppression hearing, but that evidence was not before the magistrate judge at the time the warrant was issued.

Furthermore, Appellant's assertion that he never voluntarily consented to the blood test or was provided implied consent warnings is unavailing as

the hospital personal performed the blood draw for medical purposes — it was not done at the behest of investigating officers. Rather, the blood test result was provided to the police only after Trooper Stevenson obtained the warrant. *See Commonwealth v. Seibert*, 799 A.2d 54, 63 (Pa. Super. 2002) ("[B]ecause the hospital did not withdraw [the defendant's] blood at the direction of [the police,] this search did not implicate [the defendant's] Fourth Amendment rights. Rather, the hospital withdrew [the defendant's] blood on its own initiative for its own purposes."). Accordingly, we conclude that the trial court did not err in determining there was a substantial basis for the magisterial district judge to find that Trooper Stevenson's search warrant and affidavit of probable cause included information sufficient to establish probable cause.[9] *See Jacoby*, 170 A.3d at 1082. Therefore, Appellant is entitled to no relief.

---

[9] It merits mention that in its Rule 1925(a) opinion, the trial court stated: "Pursuant to *Commonwealth v. Jones-Williams*, 237 A.3d 528 (Pa. Super. 2020) [(*Jones-Williams I*)], which was decided after the [August 28, 2018,] suppression hearing in the instant case, '[75 Pa.C.S. §] 3755(a) and its counterpart, [75 Pa.C.S. §] 1547(a), no longer serve as independent exceptions to the warrant requirement.' *Id.* at 537." Trial Ct. Op. at 2.

We acknowledge that *Jones-Williams I* is distinguishable from the present matter because Trooper Stevenson did procure a warrant before seizing Appellant's blood. Nonetheless, we further note the Pennsylvania Supreme Court recently issued a decision, which overturned, in part, this Court's decision. *See Commonwealth v. Jones-Williams*, 279 A.3d 508, 514 (Pa. 2022) (*Jones-Williams II*).

*(Footnote Continued Next Page)*

Pursuant to Section 3755 of the Motor Vehicle Code, "governmental officials may obtain an individual's blood test results if, after a motor vehicle accident, the driver requires emergency medical treatment and there is probable cause to believe that a DUI violation occurred." ***Jones-Williams I***, 237 A.3d at 535. Under Section 1547, or the implied consent statute, a motorist "shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe" that the motorist has committed a DUI offense. 75 Pa.C.S. § 1547(a).

In ***Jones-Williams I***, the defendant's car collided with a train and the driver was transported to the hospital. ***Jones-Williams I***, 237 A.3d at 531. First responders informed investigating officers that the defendant smelled of marijuana. ***Id.*** When police went to the hospital, the defendant was unconscious and therefore, they could not obtain his consent to perform a blood draw. ***Id.*** at 532. Nevertheless, they learned hospital personnel had drawn blood for medical purposes, and without first obtaining a warrant, they requested the hospital provide a blood sample for testing. ***Id.*** The defendant filed a motion to suppress, which the trial court denied because it found the test results were admissible under the exigent circumstances exception, regardless of Sections 3755 or 1547. ***Id.*** However, in its Rule 1925(a) opinion, the court determined its original finding of exigency was improper. ***Id.*** at 533.

On appeal, the defendant argued that the trial court erred in denying his motion to suppress because: (1) the Commonwealth failed to comply with Section 3755(a) of the Motor Vehicle Code; (2) even if it did comply with that statute, statutory compliance alone was insufficient to overcome the warrant requirement; and (3) there were no exigent circumstances here to justify a warrantless search. ***Jones-Williams I***, 237 A.3d at 533-34. A panel of this Court agreed with the trial court, concluding there were no exigent circumstances since the blood evidence had been preserved and "literally stopped the clock on any concern that the further passage of time could result in dissipation of evidence since the withdrawal of [the defendant]'s blood by hospital personnel ceased all metabolic activity that might influence a toxicological assessment of the sample." ***Id.*** at 544. Moreover, the panel held that in light of ***Birchfield v. North Dakota***, 579 U.S. 438 (2016) (holding, in part, that the Fourth Amendment to the United States Constitution prohibits warrantless blood tests), and ***Commonwealth v. Myers***, 164 A.3d 1162 (Pa. 2017) (holding that the language of Section 1547 does not
*(Footnote Continued Next Page)*

constitute an independent exception to the warrant requirement under both the United States and Pennsylvania Constitutions), "Section 3755(a) and its counterpart, Section 1547(a), no longer serve as independent exceptions to the warrant requirement. As such, the search of [the defendant]'s blood test results violated the Fourth Amendment [to] the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution." *Jones-Williams I*, 237 A.3d at 537. The panel concluded the trial court erred by not granting the defendant's motion to suppress. *Id.* at 546.

The Commonwealth filed a petition for allowance of appeal, which the Pennsylvania Supreme Court granted to address issues of the exigency exception and the constitutionality of Section 3755. *Jones-Williams II*, 279 A.3d at 514. The Supreme Court first noted that this Court "correctly recognized that [t]he blood draw by hospital personnel did not trigger protections under either the Fourth Amendment or Article I, Section 8 because there is no evidence that hospital personnel acted at the direction of the police or as an agent of the police." *Jones-Williams II*, 279 A.3d at 515 (citation and quotation marks omitted). As for the issue concerning the exigency exception to the warrant requirement, the Supreme Court agreed with this Court and concluded:

> At the time of that seizure, the blood was already drawn, preserved, and the evidence therein no longer dissipating. Therefore, in the absence of any other evidence that the drawn and preserved blood would be lost or destroyed within the time it would take to obtain a warrant, there were no exigent circumstances to justify the warrantless seizure. No such alternative theory of exigency exists here, as both [investigating officers] conceded that they could have obtained a warrant.

*Id.* at 518 (footnote omitted). Therefore, the Supreme Court affirmed this Court's ultimate disposition, which reversed the trial court's order denying suppression.

Regarding the constitutionality of Section 3755, the Supreme Court stated that this Court "could only reach that constitutional assessment having first concluded that the Commonwealth complied with Section 3755." *Jones-Williams II*, 279 A.3d at 519. The Supreme Court indicated there was no evidence to support the conclusion that the police officer attempted to obtain the blood pursuant to Section 3755. *Id.* at 520 (the officer completed the request for the hospital to transfer the blood sample to the police laboratory

*(Footnote Continued Next Page)*

- 17 -

Judgment of sentence affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/06/2023

_____

pursuant to Section 1547). Therefore, the Court opined: "Because the record does not establish that Section 3755 applied under these circumstances, the subsequent analysis of the statute's constitutionality should not be addressed." ***Id.*** As a result, the Court vacated the portion of this Court's holding deeming Section 3755 unconstitutional. ***Id.***

Turning to the present matter, the trial court's reliance on ***Jones-Williams I***, for the notion that Section 3755 may not serve as an independent exception to the warrant requirement, is misplaced as that determination has been reversed by ***Jones-Williams II***. As of this writing, the constitutionality of Section 3755 remains intact.