J-S18020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RONALD LEE ARNDT | : | |
| | : | |
| Appellant | : | No. 1704 MDA 2018 |

Appeal from the Judgment of Sentence Entered September 14, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003980-2017

BEFORE: BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED SEPTEMBER 24, 2019**

Appellant Ronald Lee Arndt appeals from the judgment of sentence following a bench trial and convictions for possession with intent to deliver and possession of drug paraphernalia.[1]  On appeal, Appellant contends the trial court erred by denying his motion to suppress because the information in the search warrant was stale, uncorroborated, unreliable, and hearsay within hearsay.  We affirm.

We set forth the following background, as taken from the suppression record.[2]  On June 11, 2017, Detective Joseph Grego applied for a warrant to

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), (32).

[2] We recognize that our scope of review is limited to the record available to the suppression court.  ***In re L.J.***, 79 A.3d 1073, 1085 (Pa. 2013).  In this

search Appellant's home for "any assets, paraphernalia, or other materials related to the **use** or sales of" methamphetamine. Appl. for Search Warrant and Authorization, 6/11/17 (emphasis added) (unpaginated). In support of the application, Detective Grego averred the following in his affidavit of probable cause:

> 3. That on June 29th, 2015, the Elizabethtown Police Department forwarded a Drug Task Force information form from a named citizen (complainant #1) stating that "Phillip Bennett" who lives at 303 N Hanover Street[,] Elizabethtown[,] PA is dealing heroin and meth. The complainant stated he/she "watches a lot of in and out traffic and has witnessed drug deals in front of his/her building". The complainant labels "[Appellant]" as a suspect and the "landlord" of 303 N Hanover Street[,] Elizabethtown[,] PA. Detective Kelly of the Lancaster County Drug Task force was initially assigned this complaint and is familiar with Phillip Bennett from an ongoing methamphetamine investigation including Jere Kenneth Gilgore[,] Jr.
>
> 4. That on July 28th, 2015, the Elizabethtown Police Department forwarded a Drug Task Force information form from a named citizen (complainant #1) stating that "Phillip Bennett" who lives at 303 North Hanover Street[,] Elizabethtown[,] PA, is always going to the apartment building across the street and people from the apartment building are always going to his residence and "seeing drugs a lot".
>
> 5. That on August 25th, 2015, the Elizabethtown Police Department forwarded a Drug Task Force information form from a named citizen (complainant #1) stating that "[Appellant]" who lives at 303 North Hanover Street[,] Elizabethtown[,] PA has drug transactions taking place at all times.

---

case, however, the trial court held an abbreviated suppression hearing at which only the warrant was admitted into evidence and the parties requested time to brief the issues. We have therefore included some excerpts from the trial for background purposes.

6. That during the week of March 30th, 2017, Your Affiant spoke with a Confidential Informant (CI#1). CI#1 related that he/she has personal knowledge of an individual who is in the business of selling methamphetamine in Elizabethtown, PA. CI#1 advised that he/she could controlled [sic] purchases of methamphetamine from this individual. CI#1 has demonstrated his/her knowledge of Controlled Substances to specifically include Methamphetamine, its packaging, pricing, and terminology.

7. That during the week of March 30th, 2017, CI#1 made a controlled purchase of a quantity of Methamphetamine from an unknown individual in Elizabethtown[,] PA. This purchase was made under the direction and control of your Affiant using DTF/DA Funds. Your Affiant along with Detectives Lombardo, Vance and Ziegler of the Lancaster County Drug Task Force conducted surveillance of CI#1 meeting with the unnamed subject, the unnamed subject then went to the 300 block of North Hanover Street[,] Elizabethtown[,] PA, the unnamed subject then left the area of 300 block of North Hanover Street and returned to CI#1. CI#1 was searched before the controlled purchase with negative results for contraband. After completing the controlled purchase, CI#1 met with your Affiant and turned over a quantity of Methamphetamine. CI#1 was then searched again with negative results for contraband. Your Affiant performed a field test on a portion of the methamphetamine and a positive result was obtained. During the controlled purchase, the unnamed subject told CI#1 that the methamphetamine was purchased from "Ronnie".

8. That on May 30th, 2017, your Affiant conducted surveillance of 303 N Hanover Street[,] Elizabethtown[,] PA. At approximately 1900 hours, your Affiant observed [Appellant] standing on the porch of 303 N Hanover Street[,] Elizabethtown[,] PA speaking with an unknown male.

9. That on May 31st, 2017, at 1549 hours, your Affiant observed [Appellant] leave 303 N Hanover Street[,] Elizabethtown[,] PA[,] with another male who I recognized to be Jere Kenneth Gilgore[,] Jr.[,] and get into a silver Dodge Dakota bearing PA registration ZBS9552 registered to Jere Kenneth Gilgore[,] Jr[.,] and then leave the area. Gilgore had been a subject of investigation for methamphetamine sales in the past by Detectives Kelly and Parduski of the Lancaster County Drug Task Force. Detectives Kelly and Parduski had obtained two controlled buys for

methamphetamine from Gilgore's residence, 45 N Cherry Alley[,] Elizabethtown[,] PA in October and November of 2015. During their investigation, they also observed his silver Dodge Dakota bearing PA registration ZBS9552 parked outside.

10. That on June 7th, 2017[,] at approximately 0305 hours, your Affiant, along with Detective Cavanaugh of the Lancaster County Drug Task Force, travelled to 303 N Hanover Street[,] Elizabethtown[,] PA[,] with the intent of conducting a trash pull. This would be in an attempt to corroborate the information that your Affiant has compiled on [Appellant] (DOB: 01/05/1969) and his residence of 303 N Hanover Street[,] Elizabethtown[,] PA. Upon my arrival, I observed a black in color garbage can with several black bags of garbage inside or it. This trash can was on the edge of the sidewalk closest to the road, in front of 303 N Hanover Street[,] Elizabethtown[,] PA[,] and clearly placed for pick-up. Your Affiant then conducted a trash pull and seized three garbage bags filled with trash. Your Affiant then conducted a search of the garbage and located the following items: (1) small empty clear sandwich bag containing residue that tested positive for methamphetamine on 06/07/20 at 1249 hours, (1) small clear zip-loc bag containing residue that [tested] positive for methamphetamine on 06/07/2017 at 1310 hours, (1) clear zip-loc baggie missing the entire bottom half on the bag, (1) piece of PPL [power utility] documentation with the name "[Appellant]" and the address of "303 N. Hanover St.", and methamphetamine pipe with residue. Additionally, while conducting the trash pull, your Affiant observed a silver motorcycle bearing PA registration Y2274 parked in front of the trash can, on the street, in front of 303 N Hanover Street[,] Elizabethtown[,] PA. This motorcycle and registration is in the name of "[Appellant]". Your Affiant took pictures of said items of evidence and are hereby attached to this application.

11. That based on your Affiant's training and experience utilizing clear plastic bags is a common tactic that drug dealers use to package and distribute narcotics (including but not limited to methamphetamine). This is corroborated by the (1) sandwich baggie containing methamphetamine residue and the (1) small clear plastic bag containing methamphetamine residue located in the trash pull.

12. That within the last 48 hours, your Affiant received information from CI#1 that [Appellant] had additional quan[t]ities or methamphetamine for sale.

Aff. of Probable Cause, 6/11/17, at ¶¶ 3-12.

Based on the affidavit, the magisterial district judge authorized the search warrant of Appellant's home, which occurred on June 12, 2017. The police seized, among other items, 46 grams of methamphetamine, a blue notebook listing Appellant's drug sales, drug paraphernalia, digital scale, small plastic baggies, and $1,280. Compl., 6/12/17. The police arrested and charged Appellant.

On September 12, 2017, Appellant filed a motion to suppress the evidence recovered from Appellant's home. The trial court held a brief hearing on February 2, 2018, at the conclusion of which the trial court ordered the parties to file memoranda of law addressing the suppression motion. On February 23, 2018, Appellant filed a memorandum of law contending that the information in the affidavit of probable cause "was stale, nonspecific, lacked independent police corroboration of information given by unreliable and unproven informants, and failed to provide a valid and substantiated nexus to believe there would be" drugs in Appellant's home. Appellant's Mem. in Supp. of Suppression, 2/23/18, at 7. According to the docket, the trial court denied the suppression motion on April 17, 2018, but the order was not included in the certified record transmitted to this Court.

The parties proceeded to a bench trial, at which the parties agreed to stipulate to certain facts:

> [Commonwealth]: The first witness would be Detective Joseph Grego from DTF. All the detectives are from the Lancaster County Drug Task Force. Detective Grego would testify the search warrant was approved and signed by MDJ Hartman on June 11th of 2017. There was a briefing at the office of DTF on June 12, 2017, approximately 9 a.m. The search warrant was executed on June 12 of 2017. They knocked and announced. They breached the door. There were four people inside. The service portion of the search warrant was read, and the ***Miranda*** rights were read off of the little card that they carry with them. The search began. The role of Detective Grego was to collect and log the evidence that the other detectives found. That evidence was put in the evidence locker and, in fact, it's my understanding that defense is stipulating to chain of custody for all the exhibits.
>
> [Appellant's trial counsel agreed to stipulate].
>
> [Commonwealth]: Detective Grego and Detective [Anthony] Lombardo read the ***Miranda*** warnings off of the long form, the eight-and-a-half-by-11 sheet, to [Appellant] once he was taken back to the station. [Appellant] made statements of, it's my stuff.[3] He was selling to make money. He was having trouble with employment. He buys the methamphetamine out of state and he gets more or less two ounces of meth and sells it about an ounce a month. Most of the money in the safe is from the drug sales.

N.T. Trial, 6/7/18, at 4-5. Appellant testified that the drugs were for his personal use. ***Id.*** at 12.

---

[3] Appellant had initially moved to suppress the statements, but withdrew the claim at the suppression hearing. N.T. Suppression, 2/2/18, at 2.

Appellant was convicted, and on September 14, 2018, the trial court sentenced Appellant to fifteen months to four years' imprisonment. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issue:

Did the trial court err in refusing to suppress evidence where the warrant issued was based on information which was stale, nonspecific, lacked independent corroboration of an unreliable third-party informant, and failed to provide a nexus to believe there would be drugs found at [Appellant's] home when the warrant was executed?

Appellant's Brief at 5.

Appellant raises several challenges to the search warrant. First, he contends that the information set forth in the third, fourth, and fifth paragraphs of the affidavit of probable cause is stale. *Id.* at 14. Second, Appellant argues the police failed to corroborate the stale information and establish the reliability of the named person and confidential informant. *Id.* at 15. Appellant emphasizes that the confidential information did not identify the seller of the drugs or any details of the alleged sale. *Id.* at 16. Moreover, Appellant claims, the information was double hearsay. *Id.*

Appellant also asserts that the information in the eighth and ninth paragraphs of the affidavit, in which a police officer observed Appellant with a person of interest eighteen months earlier, was also invalid. *Id.* at 17. Specifically, he alleges that the police officer failed to substantiate Appellant's identification and that being seen with a person of interest eighteen months ago did not establish criminal behavior. *Id.*

- 7 -

Appellant contends the evidence seized from the trash pull was insufficient to establish probable cause. *Id.* at 17-18. In particular, Appellant concedes that drug paraphernalia, as well as evidence linking Appellant to the address in question, was in the trash. *Id.* Appellant, however, suggests that the evidence only establishes that he lived at the address and that "someone at the residence may have smoked methamphetamine." *Id.* at 18. Appellant insists, nonetheless, that the affidavit did not establish probable cause that methamphetamine would be found.[4] *Id.* at 18.

We state the standard of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

---

[4] We note that Appellant is not challenging the constitutionality of the trash pull itself, but whether the evidence retrieved from Appellant's trash established probable cause. *See generally Commonwealth v. James*, 69 A.3d 180, 182 (Pa. 2013) (citing *California v. Greenwood*, 486 U.S. 35, 37 (1988), for proposition that the "Fourth Amendment does not prohibit warrantless search and seizure of garbage left for collection outside curtilage of home").

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Shreffler*, 201 A.3d 757, 763 (Pa. Super. 2018) (citation omitted).

In evaluating an affidavit of probable cause,

[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Commonwealth v. Manuel*, 194 A.3d 1076, 1083 (Pa. Super. 2018) (*en banc*) (citation, ellipses, brackets, and quotation marks omitted). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018) (citations and quotation marks omitted).

In *Commonwealth v. Jones*, 988 A.2d 649 (Pa. 2010), the Pennsylvania Supreme Court explained that a "grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Jones*, 988 A.2d at

655-56 (quotation marks and citation omitted). "Reasonable minds," the *Jones* Court observed, "frequently may differ on the question [of] whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Id.* at 656 (quotation marks, citation, and footnote omitted).

Instantly, the evidence retrieved from the garbage outside of Appellant's residence included plastic bags containing methamphetamine residue, methamphetamine pipe, and mail from a utility company identifying Appellant as a resident. *See* Aff. of Probable Cause at ¶ 10. We agree with the trial court that such evidence tended to establish probable cause that Appellant was using methamphetamine. *See generally Leed*, 186 A.3d at 413; *Jones*, 988 A.2d at 655-56; *Manuel*, 194 A.3d at 1083. Because the search warrant for use or sale of methamphetamine was based on evidence retrieved from a trash pull, the legality of which Appellant did not challenge, the trial court did not err in deferring to the magistrate district judge's determination and denying Appellant's suppression motion. *See Shreffler*, 201 A.3d at 763. We therefore need not address Appellant's other arguments attacking the validity of the other information in the affidavit of probable cause.[5] For these

_____

[5] We agree with the trial court, however, that much of the information in the affidavit of probable cause was stale. *Cf. Commonwealth v. Jacoby*, 170

reasons, because the trial court did not err in denying Appellant's motion to suppress, we affirm the judgment of sentence

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/24/2019

_____

A.3d 1065, 1085 (Pa. 2017) (holding that although the search warrant was flawed, ultimately, the error was harmless).