J-A11020-19

2020 PA Super 188

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
v. :
:
:
:
AKIM SHARIF JONES-WILLIAMS : No. 1428 MDA 2017

Appellant

Appeal from the Judgment of Sentence April 5, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002824-2015

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

OPINION BY OLSON, J.:                    **FILED AUGUST 11, 2020**

Appellant, Akim Sharif Jones-Williams, appeals from the judgment of

sentence entered on April 5, 2017, as made final by the denial of his

post-sentence motion on September 11, 2017, following his jury and bench

trial convictions for various crimes arising from a motor vehicle accident.  After

careful review, we vacate Appellant's judgment of sentence, reverse the order

denying suppression, and remand for a new trial.

The facts and procedural history of this case are as follows.  On July 5,

2014, Appellant was driving a red 2014 Mitsubishi Outlander accompanied by

his fiancé, Cori Sisti, and their daughter, S.J.  At approximately 4:42 p.m.,

Appellant's vehicle collided with a train at Slonnekers Landing, near the 1100

block of Cly Road, York Haven, Pennsylvania.

Officer Michael Briar and two paramedics, Leslie Garner and Lisa

Gottschall, were first to arrive at the scene.  Upon arrival, they found Appellant

outside of the vehicle, but Sisti and S.J. still inside. Garner and Gottschall immediately began treating Appellant, while Officer Briar attempted to assist Sisti and S.J. Ultimately, emergency personnel declared Sisti dead at the scene, but transported Appellant and S.J. to the hospital for medical treatment.[1] Subsequently, various individuals informed the officer in charge, Lieutenant Steven Lutz, that they detected an odor of burnt marijuana emanating from Appellant. Therefore, at approximately 6:00 p.m., Lieutenant Lutz directed Sergeant Keith Farren to go to the hospital to interview Appellant and obtain a blood sample.

When Sergeant Farren arrived at York Hospital, he discovered Appellant lying in a hospital bed, restrained, and fading in and out of consciousness. As such, Sergeant Farren could not interview Appellant or request that he consent to a blood draw. Later, however, Sergeant Farren learned that hospital personnel drew Appellant's blood at 5:56 p.m., before his arrival.[2] This prompted Sergeant Farren to request that the hospital's laboratory transfer Appellant's blood sample to National Medical Services ("NMS") laboratory for testing to determine the presence of alcohol or controlled substances. Sergeant Farren filled out the requisite forms at 7:30 p.m. He did not obtain a warrant prior to submitting the request to test Appellant's blood sample.

---

[1] S.J. survived the injuries she sustained in the accident.

[2] The record does not establish why hospital personnel collected a blood sample from Appellant. It is clear, however, that hospital personnel performed the blood draw before receiving a request from Sergeant Farren.

The hospital laboratory transferred Appellant's blood sample on July 8, 2014 (three days after the collision) and NMS laboratory issued its toxicology report analyzing Appellant's blood sample on July 15, 2014. The results revealed that Appellant's blood contained Delta-9 THC, the active ingredient in marijuana, at a concentration of 1.8 ng/ml and Delta-9 Carboxy THC, a marijuana metabolite, at 15 ng/ml.

Thereafter, on June 9, 2015, the Commonwealth filed a bill of information against Appellant. Specifically, the Commonwealth charged Appellant with one count each of the following offenses: homicide by vehicle while driving under the influence ("DUI"); homicide by vehicle; endangering the welfare of a child ("EWOC"); recklessly endangering another person ("REAP"); DUI: controlled substance – schedule I; DUI: controlled substance - schedule I, II, or III; DUI: general impairment; careless driving; careless driving – unintentional death; aggravated assault while DUI; and aggravated assault by vehicle. Bill of Information, 6/9/15, at *1-3 (un-paginated).

On October 26, 2015, Appellant filed an omnibus pre-trial motion. In his motion, Appellant moved to suppress the blood test results obtained by police. Appellant's Omnibus Pre-Trial Motion, 10/26/15, at *1-14 (un-paginated). Appellant argued that the police violated his constitutional rights by requesting to test his blood sample without a warrant. *Id.* at *9-14 (un-paginated); *see also* Appellant's Brief in Support of Omnibus Pre-Trial Motion, 1/29/16, at 29-39. Appellant also asserted that, notwithstanding the

statutory provisions set forth at 75 Pa.C.S.A. § 3755(a) (Reports by Emergency Room Personnel), if the police "can obtain a warrant . . . without affecting the efficacy of the investigation," the Fourth Amendment of the United States' Constitution and Article I, Section 8 of Pennsylvania's Constitution require them to do so. Appellant's Omnibus Pre-Trial Motion, 10/26/15, at *11 (un-paginated).

The trial court held a suppression hearing on December 21, 2015, and subsequently denied Appellant's motion to suppress on April 27, 2016. Trial Court Order, 4/27/16, at 1. In doing so, the trial court held that Appellant's blood test results were admissible because exigent circumstances existed and, as such, the warrantless search did not violate Appellant's constitutional rights. Trial Court Opinion, 4/27/16, at 7-11.

Appellant's jury trial commenced January 9, 2017. The Commonwealth admitted at trial the report documenting the presence of Delta-9 THC and Delta-9 Carboxy THC in Appellant's bloodstream. N.T. Trial, 1/10/17, at 261. On January 13, 2017, Appellant was found guilty of homicide by vehicle while DUI,[3] homicide by vehicle,[4] EWOC,[5] REAP,[6] DUI: controlled

---

[3] 75 Pa.C.S.A. § 3735(a).

[4] 75 Pa.C.S.A. § 3732(a).

[5] 18 Pa.C.S.A. § 4304(a)(1).

[6] 18 Pa.C.S.A. § 2705.

substance - schedule 1,[7] DUI: controlled substance – metabolite,[8] aggravated assault while DUI,[9] aggravated assault by vehicle,[10] and careless driving.[11] On April 5, 2017, the trial court sentenced Appellant to four to eight years' imprisonment followed by 12 months' probation.

"On April 17, 2017, Appellant filed a post-sentence motion alleging that the trial court erred in denying suppression of Appellant's blood test results and that the trial court erred in finding that the weight of the evidence was met in [five] of the [nine] counts. [Through oversight, the trial court] granted the motion on May 10, 2017. On May 19, 2017, the trial court vacated its [May 10, 2017] order [] and ordered the parties to schedule a hearing [on] the post-sentence motion. [Thereafter, t]he trial court allowed Appellant to file a supplemental post-sentence motion on June 21, 2017[, and] held a hearing on the post-sentence motion on July 25, 2017. The trial court then denied [Appellant's] post-sentence motion [by] operation of [] law on September 11, 2017." Trial Court Opinion, 4/13/18, at 3.

On September 14, 2017, Appellant filed a notice of appeal to this Court. Appellant's Notice of Appeal, 9/14/17, at 1-2. On October 5, 2017, the trial

_____

[7] 75 Pa.C.S.A. § 3802(d)(1)(i).

[8] 75 Pa.C.S.A. § 3802(d)(1)(iii).

[9] 75 Pa.C.S.A. § 3735.1(a).

[10] 75 Pa.C.S.A. § 3732.1(a).

[11] 75 Pa.C.S.A. § 3714(a).

court entered an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Trial Court Order, 10/5/17, at 1. Appellant timely complied.

The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 13, 2018. Trial Court Opinion, 4/13/18, at 1-32. In its Rule 1925(a) opinion, the trial court stated that it incorrectly determined that exigent circumstances existed to permit the warrantless search. *Id.* at 12. In view of its error, the trial court asked this Court to "suppress Appellant's blood test results" and "affirm [Appellant's convictions for EWOC and REAP] based upon the circumstantial evidence." *Id.* at 32.

On appeal, Appellant raises the following issues for our review:[12]

    I.    [Did the trial court err in denying Appellant's motion to suppress when the Commonwealth failed to comply with 75 Pa.C.S.A. § 3755(a) of the Motor Vehicle Code?]

    II.    [If the Commonwealth did comply with Section 3755(a)'s requirements, did the trial court still err in denying Appellant's motion to suppress because statutory compliance is insufficient to overcome the warrant requirement of the Fourth Amendment of the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution in light of the recent decisions in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016), *Missouri v. McNeely*, 569 U.S. 141 (2013), *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017), and *Commonwealth v. March*, 172 A.3d 582 (Pa. 2017)?]

    III.    Did the trial court err in denying [Appellant's] [m]otion for [s]uppression of [e]vidence [when] there were not exigent circumstances [and] the police officers could have reasonably

---

[12] We have altered the order of Appellant's issues for clarity and ease of discussion. *See* Appellant's Brief at 1-2.

obtained a search warrant before [requesting the transfer of Appellant's blood sample to NMS laboratory for testing] without significantly undermining the efficacy of the search?

IV. Did the trial court err in finding that, as a matter of law, the Commonwealth provided sufficient evidence to meet its burden of proof regarding [the following convictions: homicide by vehicle while DUI, aggravated assault by vehicle while DUI, EWOC, and REAP?]

V. Did the trial court abuse its discretion in denying [Appellant's] [p]ost-[s]entence [m]otion where the jury's verdict [was against the weight of the evidence for the following convictions: homicide by vehicle while DUI, aggravated assault by vehicle while DUI, EWOC and REAP?]

Appellant's Brief at 1-2.

In Appellant's first three issues, he argues that the trial court erred in denying his motion to suppress. Appellant's Brief at 45-58. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. 2012); *see also* Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, this Court has declared:

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains un[-]contradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial

court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Stevenson*, 894 A.2d 759, 769 (Pa. Super. 2006) (citation omitted). Although we are bound by the factual and the credibility determinations of the trial court which have support in the record, we review any legal conclusions *de novo*. *Commonwealth v. George*, 878 A.2d 881, 883 (Pa. Super. 2005), *appeal denied*, [] 891 A.2d 730 (Pa. 2005).

*Commonwealth v. Wells*, 916 A.2d 1192, 1194–1195 (Pa. Super. 2007) (parallel citations omitted).

First, Appellant argues that the trial court erred in denying his motion to suppress because the Commonwealth did not comply with the requirements of 75 Pa.C.S.A. § 3755(a) of the Motor Vehicle Code when Sergeant Farren requested chemical testing of Appellant's blood. Relying solely on this Court's decision in *Commonwealth v. Shaffer*, 714 A.2d 1035 (Pa. Super. 1999), Appellant claims that a valid blood draw occurs pursuant to Section 3755(a) **only** when hospital personnel make a probable cause determination that a driver was DUI. Here, Appellant argues that the Commonwealth did not adhere to Section 3755(a)'s requirements because it did not show that, at the time hospital personnel drew Appellant's blood, they "made an independent finding of probable case" or that they were "privy to any determinations of probable cause made by any of the police officers." Appellant's Brief at 55. Thus, Appellant argues that the Commonwealth failed to demonstrate compliance with Section 3755(a). We disagree.

Section 3755(a) of the Motor Vehicle Code reads as follows:

**§ 3755. Reports by emergency room personnel**

(a) General rule. --If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S.A. § 3755(a). Thus, pursuant to the language of the statute, governmental officials may obtain an individual's blood test results if, after a motor vehicle accident, the driver requires emergency medical treatment and there is probable cause to believe that a DUI violation occurred.

Setting aside, for a moment, the issue of whether statutory compliance, by itself, continues to support an independent basis for obtaining blood test results without a warrant and consistent with constitutional concerns, we conclude that the Commonwealth, in this case, proved adherence with the requirements of Section 3755(a). In **Commonwealth v. Riedel**, 651 A.2d 135, 139 (Pa. 1994), the appellant was involved in a single vehicle accident and sustained injuries. **Id.** at 137. Subsequently, emergency personnel arrived and began treating the appellant in an ambulance. **Id.** A Pennsylvania State Trooper later arrived and observed that the appellant exhibited signs of

intoxication. *Id.* As such, the trooper followed medical personnel to the hospital to request a blood draw from the appellant for chemical analysis. *Id.* The trooper, however, learned that medical personnel already drew the appellant's blood for medical purposes and, as such, did not request a blood draw. *Id.* The trooper later wrote to the hospital requesting the results of the appellant's blood test. *Id.* "Based on this information, [the] appellant was charged with [DUI], 75 Pa.C.S.[A.] §§ 3731(a)(1) and (a)(4), [and later] convicted in a non-jury trial." *Id.* After this Court affirmed the appellant's judgment of sentence, he appealed to our Supreme Court. *See Commonwealth v. Riedel*, 620 A.2d 541 (Pa. Super. 1992) (unpublished memorandum).

On appeal, the appellant argued that "the police violated his Fourth Amendment rights against unreasonable searches and seizures when, in the absence of exigent circumstances, they obtained the results of his medical purposes blood test without a warrant." *Riedel*, *supra* at 137. In response, the Commonwealth argued that the trooper properly obtained the appellant's blood test results because he complied with Section 3755(a). *Id.* at 139. Agreeing with the Commonwealth, our Supreme Court in *Riedel* explained that the facts established that the appellant was in a motor vehicle accident, was transported to the hospital for emergency medical treatment, and that the officer had probable cause to believe he was DUI. *Id.* at 140. Accordingly, the Court concluded that, even though the officer "chose to wait[] and obtain

[the] appellant's test results by mailing a request to the director of the hospital's laboratory," he still complied with the terms of Section 3755(a). *Id.*

This Court reached a similar conclusion in *Commonwealth v. Keller*, 823 A.2d 1004 (Pa. Super. 2003). Like *Riedel*, *Keller* involved a motor vehicle accident, emergency medical treatment, and the existence of probable cause to believe that the appellant was DUI. As such, an officer went to the hospital where the appellant was transported and "filled out a Toxicology Request form." *Id.* at 1007. The hospital then "mailed a report of the blood test results to the State Police." *Id.* Prior to trial, the appellant moved to suppress his blood test results and the trial court granted suppression. *Id.* at 1008.

On appeal, the Commonwealth argued that the trial court erred in suppressing the appellant's blood test results. *Id.* This Court agreed. In reaching this conclusion, we noted that the "police officer specifically requested that a BAC test be performed at [the hospital]" and the appellant "never disputed that [the trooper] had probable cause to believe that [he] was [operating a motor vehicle under the influence] of alcohol." *Id.* at 1010. As such, this Court concluded that hospital personnel "were required to withdraw blood from [the appellant] and release the test results" pursuant to Section 3755(a). *Id.* Accordingly, per *Riedel* and *Keller*, the Commonwealth demonstrates compliance with Section 3755(a) if, following a motor vehicle accident, a driver seeks emergency medical treatment, an officer has probable cause to believe that the driver operated his or her vehicle under the influence

of alcohol or a controlled substance, and the officer subsequently requests the driver's blood test results from the hospital.

The facts of the instant case are nearly identical to both **Riedel** and **Keller**. Indeed, after Appellant's vehicle collided with the train, emergency personnel transported Appellant to the hospital for emergency medical treatment, during which, the hospital extracted a sample of Appellant's blood. Following Appellant's transport, the officers at the scene of the accident developed probable cause to believe that Appellant was DUI after multiple emergency personnel who responded to the accident reported to Lieutenant Lutz that they detected an odor of marijuana about Appellant's person. Thereafter, at the request of Lieutenant Lutz, Sergeant Farren responded to the hospital and requested Appellant's blood test results.[13]  Based upon the foregoing, we conclude that the Commonwealth complied with Section 3755(a).

Appellant's position, which asserts that there was non-compliance with Section 3755(a) because hospital personnel lacked probable cause, is unavailing because he recognizes only one of the possible ways the

---

[13] The procedure followed by law enforcement personnel complied with Section 3755(a) even though the hospital extracted Appellant's blood sample prior to Sergeant Farren's request.  **See Commonwealth v. Seibert**, 799 A.2d 54, 64 (Pa. Super. 2002) (explaining that an "officer is entitled to the release of [chemical] test results" if "an officer determines there is probable cause to believe a person operated a motor vehicle under the influence . . . and requests that hospital personnel withdraw blood" regardless of the fact that "medical staff previously drew the blood and a request by the police . . . came after the blood was drawn.")

Commonwealth may adhere to Section 3755(a) in seeking blood test results for an individual who requires emergency medical treatment following a motor vehicle accident. Indeed, our Supreme Court previously recognized at least two pathways for achieving compliance with Section 3755(a):

> Section 3755(a) is, to say the least, inartfully drafted. For some vague and curious reason, the legislature has required a probable cause determination without specifying who is to make such determination, or how such an abstract requirement is to be met. The request of a police officer, based on probable cause to believe a violation of Section 3731, would seem to satisfy the probable cause requirement and therefore mandate that hospital personnel conduct BAC testing. Likewise, a determination by hospital personnel familiar with Section 3755(a), that probable cause existed to believe that a person requiring treatment had violated Section 3731, would also seem to mandate that hospital personnel conduct BAC testing.

*Commonwealth v. Shaw*, 770 A.2d 295, 299 n.3 (Pa. 2001).[14] Herein, the officers had probable cause to believe that Appellant was DUI when they asked the hospital to conduct chemical testing. As we have stated, this is sufficient to show that the Commonwealth complied with the requirements of Section 3755(a).

Next, Appellant argues that, even if the Commonwealth established compliance with Section 3755(a), the trial court erred in denying his motion to suppress because Section 3755(a) is unconstitutional. Upon review, we

---

[14] Based upon this language, it would appear that either law enforcement officers or hospital personnel may make the probable cause determination. Thus, the key inquiry is whether the individual who requested chemical testing did, in fact, have probable cause to believe that the individual who operated the vehicle was under the influence of alcohol or a controlled substance.

- 13 -

conclude that, in light of the United States Supreme Court's decision in **Birchfield**, **supra**, and our Supreme Court's decision in **Myers**, **supra**, Section 3755(a) and its counterpart, Section 1547(a), no longer serve as independent exceptions to the warrant requirement. As such, the search of Appellant's blood test results violated the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.

The Fourth Amendment and Article I, Section 8 prohibit unreasonable searches and seizures. **Commonwealth v. McAdoo**, 46 A.3d 781, 784 (Pa. Super. 2012). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." **Commonwealth v. Strickler**, 757 A.2d 884, 888 (Pa. 2000). Established exceptions include actual consent, implied consent, search incident to lawful arrest, and exigent circumstances. **Commonwealth v. Livingstone**, 174 A.3d 609, 625 (Pa. 2017) (citation omitted).

At issue in the present case is the implied consent scheme set forth in Sections 1547 and 3755 of the Motor Vehicle Code. Previously, Pennsylvania courts concluded that the aforementioned statutes obviated "the need to obtain a warrant in DUI cases." **March**, **supra** at 808; **see Riedel**, **supra** at 143; **Keller**, **supra** at 1009; **Commonwealth v. Barton**, 690 A.2d 293, 296 (Pa. Super. 1997). Indeed, both this Court and our Supreme Court have explained that,

> "[t]ogether, [S]ections 1547 and 3755 comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence.

**Barton**, **supra** at 296, *citing* **Riedel**, **supra** at 180. Thus, our courts previously held that compliance with the aforementioned statutory scheme independently negated the need to obtain a warrant because a "driver's implied consent under the statute satisfie[d] the consent exception to the warrant requirement." **March**, **supra** at 808. In recent years, however, Pennsylvania's so-called implied consent scheme has undergone judicial scrutiny, especially in the wake of decisions by the United States Supreme Court and the Pennsylvania Supreme Court that suggest that consent, as an exception to the warrant requirement, can only be inferred consistent with constitutional imperatives where it is voluntarily given under the totality of the circumstances.

We begin by looking at Section 1547 of the Motor Vehicle Code, which our Supreme Court recently examined, and which states, in relevant part, as follows:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

(a) General rule. —Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to

- 15 -

believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock)[.]

75 Pa.C.S.A. § 1547(a)(1).

Until our Supreme Court's decision in **Myers**, **supra** "[t]he [i]mplied [c]onsent [l]aw, 75 Pa.C.S.[A.] § 1547(a), assume[d] acquiescence to blood testing 'absent an affirmative showing of the subject's refusal to consent to the test at the time that the testing is administered.'" **Riedel**, **supra** at 141, *citing* **Commonwealth v. Eisenhart**, 611 A.2d 681, 683 (Pa. 1992). This view seems to have emerged from the language of Section 1547(b), which was said to "grant[] an explicit right to a driver who is under arrest for [DUI] to refuse to consent to chemical testing." **Riedel**, **supra** at 141. Section 1547(b) states, in pertinent part:

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer[.]

75 Pa.C.S.A. §1547(b)(1). Pennsylvania courts interpreting this provision traditionally limited the right to refuse blood testing to those individuals who were both conscious and under arrest for a violation of Section 3802.

Our Supreme Court addressed this issue in **Eisenhart**, **supra**. In **Eisenhart**, after a "vehicle crashed into the cement wall of a residence," a

police officer arrived and observed that the appellant, Eisenhart, displayed signs of intoxication, including pupil dilation, difficulty maintaining balance, and a general dazed demeanor. *Id.* at 681- 682. Eisenhart also failed two field sobriety tests. *Id.* at 682. As such, the officer placed him under arrest. *Id.* While the officer transported Eisenhart to the hospital for a blood test, he "alternatively agreed and refused to submit to a blood test." *Id.* "At the hospital, [Eisenhart] refused to consent to a blood alcohol test." *Id.* Nonetheless, hospital personnel conducted a blood test, which revealed an alcohol level over the legal limit. *Id.*

The Commonwealth ultimately charged Eisenhart with various crimes, including DUI. *Id.* Thereafter, Eisenhart attempted to suppress the blood test results. He argued "that once the operator of a vehicle refuses to submit to a blood test . . . 75 Pa.C.S.[A.] § 1547[] prohibits the testing of blood for alcohol level and the subsequent evidentiary use of such test results." *Id.* at 682. Eventually, our Supreme Court granted *allocatur* to consider "whether the appellant has the right to refuse to submit to blood alcohol testing under the Motor Vehicle Code." *Id.*

Ultimately, the Court concluded that "[t]he statute grants an explicit right to a driver who is **under arrest** for [DUI] to refuse to consent to chemical testing." *Id.* at 683 (emphasis added); *see also* 75 Pa.C.S. § 1547. Notably, the Court limited its holding to "conscious driver[s]." *Id.* at 684. Indeed, it declined to opine on an unconscious driver's statutory right to refuse consent and stated that the "conscious driver has the right under 1547(b) to revoke

- 17 -

that consent and once that is done, 'the testing shall not be conducted.'" **Id.** (citation omitted).

The Supreme Court later reaffirmed **Eisenhart**'s holding in **Riedel**, the facts of which we explained above. The **Riedel** Court not only addressed the Commonwealth's compliance with Section 3755(a), but also discussed whether the appellant in **Riedel** "was denied the right to refuse blood alcohol testing under 75 Pa.C.S.A. §1547, the [i]mplied [c]onsent [l]aw." **Riedel**, **supra** at 138. Indeed, Riedel claimed that he possessed "an absolute right to refuse testing" and "any other interpretation would result in an impermissible distinction between drivers under arrest and those, like [Riedel], who are not requested to consent because they are unconscious or are receiving emergency medical treatment." **Id.** at 141.

The Supreme Court disagreed. Instead, the Court held that because Riedel was "not under arrest at the time the blood test was administered[, he could not] claim the explicitly statutory protection of [S]ection 1547(b)." **Id.** Moreover, the Court explained that it would "not reformulate the law to grant an unconscious driver or [a] driver whose blood was removed for medical purposes the right to refuse to consent to blood testing" because the "decision to distinguish between classes of drivers in the implied consent scheme is within the province of the legislature." **Id.** Thus, pursuant to **Eisenhart** and **Riedel**, the implied consent statute found at Section 1547 operated as an independent exception to the warrant requirement. At this time, however, the right to refuse consent to a blood draw or chemical testing did not extend

- 18 -

to unconscious drivers who may have been under suspicion for DUI but who had not yet been arrested.

Recently, however, our Supreme Court altered the reading of the implied consent statute in *Myers*, *supra*. In *Myers*, the Philadelphia Police responded to a call stating that an individual was "screaming" in a vehicle. *Id.* at 1165. An officer arrived at the scene and observed a vehicle matching the call description with an individual, Myers, in the driver seat. *Id.* The officer pulled up behind the vehicle and activated his siren and emergency lights. *Id.* Myers subsequently exited the vehicle and "stagger[ed]" toward the officer. *Id.* Myers tried to speak "but his speech was so slurred that [the officer] could not understand [him]." *Id.* The officer detected alcohol about Myers' person and observed a bottle of brandy in the vehicle's front seat, as the driver's door was open. *Id.* Because the officer believed that Myers needed medical attention due to his state of inebriation, the officer placed Myers under arrest and called for a wagon to transport him to the hospital. *Id.*

Thereafter, another Philadelphia police officer arrived at the hospital where Myers was taken. *Id.* "A few minutes before [the officer] arrived, however, the hospital staff administered four milligrams of Haldol" to Myers, rendering him unconscious. *Id.* As such, Myers was unresponsive when the officer attempted to communicate with him. *Id.* Nonetheless, the officer read

the *O'Connell*[15] warnings to Myers, who did not respond, and then directed a nurse to draw Myers's blood. *Id.* The officer did not have a warrant. *Id.* The Commonwealth later charged Myers with DUI. Myers then moved to suppress his blood test results, which the trial court subsequently granted. The Commonwealth appealed.

After agreeing to review the case, our Supreme Court first addressed whether an unconscious arrestee possesses the statutory right to refuse blood testing pursuant to Section 1547(b) of the Motor Vehicle Code. Ultimately, the Court explained that "the statute [contains] unambiguous language [that] indicates that the right of refusal applies without regard to the motorist's state

_____

[15] The *O'Connell* warnings were first pronounced in *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989). In a later opinion, our Supreme Court explained both the *O'Connell* warnings and the reasoning behind the warnings:

> in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges[. T]he duty of the officer to provide the *O'Connell* warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his [*Miranda v. Arizona*, 384 U.S. 436 (1966)] rights.

*Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 545 (Pa. 1996).

of consciousness." ***Id.*** at 1172. Thus, the Court held that Section 1547(b)'s right of refusal applies to all arrestees, conscious or unconscious. ***Id.***

Next, the Court addressed whether "75 Pa.C.S.[A.] § 1547(a) [which] provid[es] that a DUI suspect 'shall be deemed to have given consent' to a chemical test [constitutes] an independent exception to the warrant requirement of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution." ***Id.*** at 1180 (citation omitted). Although unable to garner majority approval,[16] the Court concluded that "the language of 75 Pa.C.S.[A.] § 1547(a) . . . does not constitute an independent exception to the warrant requirement." ***Id.***

In reaching this conclusion, the Court recognized that consent, as an exception to the warrant requirement, must be voluntary. ***Id.*** at 1176-1177. Per the Court, this is true even if consent is implied. ***Id.*** Indeed, the ***Myers*** Court concluded that, "despite the existence of an implied consent provision, an individual must give actual, voluntary consent at the time that testing is requested." ***Id.*** at 1178. In reaching this conclusion, the ***Myers*** Court relied upon the United States Supreme Court's decision in ***Birchfield v. United States***, 136 S.Ct. 2160 (2016). It stated:

> Of particular salience for today's case, the ***Birchfield*** Court addressed the circumstance in which a DUI suspect is unconscious when a chemical test is sought. The [United States Supreme] Court explained:

---

[16] Only Justices Donohue and Dougherty joined this portion of Justice Wecht's opinion. ***See Myers***, 164 A.3d 1180, n. 15.

- 21 -

J-A11020-19

> It is true that a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to do what is needed to take a breath test due to profound intoxication or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be.
>
> *Id.* at 2184–85. Lest anyone doubt what the Supreme Court meant when it stated that police officers in such circumstances "may apply for a warrant if need be," the Court emphasized that "[n]othing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not." *Id.* at 2184. Noting that all fifty states have enacted implied consent laws, *id.* at 2169, the Court nowhere gave approval to any suggestion that a warrantless blood draw may be conducted upon an unconscious motorist simply because such a motorist has provided deemed consent by operation of a statutory implied consent provision. Rather, the Supreme Court indicated that a warrant would be required in such situations unless a warrantless search is necessitated by the presence of a true exigency.

*Id.* at 1178–1179. Based upon the foregoing, the *Myers* Court concluded that, "[l]ike any other searches based upon the subject's consent, a chemical test conducted under the implied consent statute is exempt from the warrant requirement only if consent is given voluntarily under the totality of the circumstances." *Id.* at 1180. As such, the Court held that because the appellant in *Myers* was unconscious, he did not have the opportunity to "make a 'knowing and conscious choice' regarding whether to undergo chemical testing or to exercise his right of refusal." *Id.* at 1181 (citation omitted). Thus, the totality of the circumstances demonstrated that he did not voluntarily consent to the blood draw. *Id.*

- 22 -

In **Myers**, a majority of our Supreme Court held that an individual arrested for DUI, whether conscious or unconscious, possessed a statutory right to refuse chemical testing. A mere plurality of the **Myers** court held, however, that Section 1547(a), by itself, does not establish an independent exception to the warrant requirement. Following **Myers**, the issue of whether compliance with Section 1547(a) or Section 3755(a), standing alone, serves as an independent exception to the warrant requirement remains unsettled, especially for individuals who are unconscious and not under arrest at the time of a blood draw.

Despite this uncertainty, the subsequent history of a recently-published decision by a panel of this Court offers insight as to how our Supreme Court would address these issues in future cases. The facts in **Commonwealth v. March**, 154 A3d 803 (Pa. Super. 2017) are nearly identical to the facts of the instant case. On July 14, 2015, a single vehicle accident occurred. **Id.** at 805. When police arrived at the scene, emergency medical personnel were treating March, the driver, who was unresponsive and subsequently transferred to the hospital for treatment. **Id.** After investigating the scene of the accident, the officer learned information that provided probable cause to believe that March was under the influence of a controlled substance at the time of the accident. **Id.** The officer then traveled to Reading Hospital to request a sample of March's blood. **Id.** A request was made, without a warrant, and a blood draw was subsequently taken which later revealed the "presence of several Schedule I controlled substances in March's blood." **Id.**

at 806. Notably, at the time of the blood draw, March was unconscious but not under arrest. **Id.** at 805. Thereafter, the Commonwealth charged March with various crimes, including DUI (controlled substance). **Id.** at 806. March filed an omnibus pre-trial motion seeking to suppress the blood evidence based upon an allegedly illegal blood draw. **Id.** The trial court granted March's motion. **Id.** The Commonwealth then appealed to this Court.

On appeal, this Court concluded that the "interplay" between Section 1547(a) and Section 3755(a) "allowed for [March's] warrantless blood draw and release of the results." **Id.** at 813. In reaching this conclusion, this Court in **March** made the distinction that, unlike the appellant in **Myers**,[17] March was not under arrest at the time of the blood draw. **Id.** As such, this Court concluded that he did not possess the statutory right to refuse consent pursuant to Section 1547(b). **Id.** In making this distinction, the **March** Court relied on the Pennsylvania Supreme Court's previous decisions in **Riedel** and **Eisenhart**. **Id.** Furthermore, the Court, relying on **Riedel**, concluded that because March "was unconscious and unresponsive," he did not have the right to refuse to consent to blood testing. **Id.** Accordingly, we concluded that the "warrantless blood draw was permissible" because March "was involved in a motor vehicle accident, was unconscious at the scene and required immediate medical treatment, was not under arrest, and remained unconscious when the

---

[17] This Court issued its decision in **March** prior to our Supreme Court's decision in **Myers**, **supra**. Thus, the panel relied upon this Court's previous decision in **Commonwealth v. Myers**, 118 A.3d 1122 (Pa. Super. 2015), *appeal granted*, 131 A.3d 480 (2016).

blood tests were administered." *Id.*  Ultimately, however, the Supreme Court vacated and remanded our decision in *March*.  *See Commonwealth v. March*, 172 A.3d 582 (Pa. 2017).  In doing so, the Supreme Court expressly instructed this Court to reconsider our disposition in *March* in light of the decision in *Myers*, *supra* and the United States Supreme Court's decision in *Birchfield*, *supra*.  *See id.*

Based upon the foregoing, we conclude that Section 1547(a) and its counterpart, Section 3755(a), no longer independently support implied consent on the part of a driver suspected of or arrested for a DUI violation and, in turn, dispense with the need to obtain a warrant.  "Simply put, statutorily implied consent cannot take the place of voluntary consent." *Myers*, *supra* at 1178.  Thus, in order for the Commonwealth to request a driver's blood test results, it must obtain a warrant or it must proceed within a valid exception to the warrant requirement.  If government officials rely upon a driver's consent to request his blood test results, the Commonwealth must demonstrate that the driver's consent is voluntary, which means the driver had a meaningful opportunity to "make a 'knowing and conscious choice' of whether to undergo chemical testing or exercise his right of refusal." *Id.* at 1181 (citation omitted).

In this case, the Commonwealth cannot simply rely upon its compliance with Section 3755(a) to justify the warrantless request to test Appellant's blood sample.  As stated above, by the time Sergeant Farren arrived at York Hospital, Appellant was fading in and out of consciousness.  N.T. Suppression

Hearing, 12/21/15, at 59. Appellant, therefore, did not have the "opportunity to choose whether to exercise [the right of refusal] or to provide actual consent to the blood draw." *Myers*, *supra* at 1181. "Because [Appellant] was deprived of this choice, the totality of the circumstances unquestionably demonstrate[] that he did not voluntarily consent to the blood draw." *Id.* Thus, the Commonwealth's warrantless request to test Appellant's blood sample violated Appellant's constitutional rights and the trial court erred in denying his motion to suppress.

Lastly, we must address whether exigent circumstances existed in this case to permit the warrantless request to test Appellant's blood sample. Herein, Appellant argues that the Commonwealth failed to prove that exigent circumstances existed to permit the warrantless search. Appellant's Brief at 57-58. We are constrained to agree.

Exigent circumstances comprise one of the "well-recognized exception[s]" to the Fourth Amendment's and Article I, Section 8's warrant requirements. *McNeely*, *supra* at 148. Exigent circumstances "[exist] when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable." *Id.* at 148-149. In *Schmerber v. California*, 384 U.S. 757 (1966), the United States Supreme Court considered the constitutionality of a warrantless blood draw under circumstances analogous to those present here. The *Schmerber* Court concluded that an exigency may arise if an officer "reasonably [] believe[s he is] confronted with an emergency, in which the delay necessary

to obtain a warrant, under the circumstances, threaten[s] the destruction of evidence." *Id*. at 770. The existence of an exigency that overcomes the warrant requirement is determined on a case-by-case basis after an examination of the totality of the circumstances. *McNeely*, *supra* at 145 (determination of whether an exigency supports a warrantless blood draw in drunk-driving investigation is done "case by case[,] based on the totality of the circumstances").

The United States Supreme Court recently revisited the issue of exigent circumstances in the context of intoxicated driving investigations. In *Mitchell v. Wisconsin*, 139 S.Ct. 2525 (2019), the Court explained that, in general, exigent circumstances may exist to permit the police to pursue a warrantless blood draw if the driver's BAC is dissipating and the driver is unconscious. *Mitchell* 139 S.Ct. at 2537. In *McNeely*, however, the Supreme Court cautioned that the natural metabolization of BAC, alone, does not present "a *per se* exigency that justifies an exception to the [warrant requirement]." *McNeely*, *supra* at 145. Instead, *McNeely* clarified that the "the metabolization of alcohol [or a controlled substance] in the bloodstream and the ensuing loss of evidence are among the factors" to consider when determining whether exigent circumstances justify a warrantless blood draw. *Id*. at 165. *McNeely* also highlighted additional factors, such as the "need for the police to attend to a related car accident," "the procedures in place for obtaining a warrant, the availability of a magistrate judge," and "the practical problems of obtaining a warrant within a timeframe that still preserves the

- 27 -

opportunity to obtain reliable evidence." *Id*. at 164. Notably, this Court previously utilized the aforementioned factors to determine whether an exigency existed in a drunk-driving investigation. *See Commonwealth v. Trahey*, 183 A.3d 444, 450-452 (Pa. Super. 2018) (applying the factors listed in *McNeely* to determine whether, under the totality of the circumstances, an exigency permitted a warrantless blood draw).

Based upon the totality of circumstances present in this case, we conclude that the Commonwealth failed to prove that an exigency permitted the police to request, without a warrant, the chemical testing of Appellant's blood sample. At the suppression hearing, the Commonwealth established that the police were "dealing with a chaotic situation" and that they had probable cause to believe that Appellant was driving under the influence of marijuana. N.T. Suppression Hearing, 12/21/15, at 77. Specifically, Officer Briar explained that the scene involved a collision between a train and a vehicle where one person (Sisti) was declared dead, and two others (Appellant and S.J.) required emergency treatment. *Id*. at 7-39. In addition, Officer Kevin Romine testified that he interviewed the train's conductor, Virgil Weaver, on the day of the accident and Weaver informed him that he "detected an odor of marijuana around the vehicle" after attempting to render aid. *Id*. at 46. In addition, Officer Romine testified that he interviewed Leslie Garner, the paramedic who assisted Appellant, and she confirmed that "she detected an odor of marijuana about [Appellant's] person." *Id*. at 47.

While these circumstances undoubtedly confirm the existence of a tragic and unfolding emergency, other factors compellingly undermine the conclusion that exigent circumstances permit us to jettison the warrant requirement. Sergeant Farren testified that when he arrived at York Hospital, he learned that hospital personnel already obtained a blood sample from Appellant. *Id.* at 59. The blood draw occurred at 5:56 p.m., approximately one hour and 20 minutes after the accident. As of 5:56 p.m., then, Appellant's blood sample, including all of the intoxicants contained therein, was preserved. Thus, the extraction of Appellant's blood shortly before 6:00 p.m. on the date of the accident literally stopped the clock on any concern that the further passage of time could result in dissipation of evidence since the withdrawal of Appellant's blood by hospital personnel ceased all metabolic activity that might influence a toxicological assessment of the sample. As a result, any argument that an exigency existed at the time Sergeant Farren submitted his request to test Appellant's blood sample was no longer viable.[18]

_____

[18] Sergeant Farren's request to test Appellant's blood sample constitutes the relevant search for purposes of our constitutional analysis. That is, we look to the circumstances that existed at the time of his request to determine whether an exigency was present. The blood draw by hospital personnel did not trigger protections under either the Fourth Amendment or Article I, Section 8 because there is no evidence that hospital personnel acted at the direction of the police or as an agent of the police. *Seibert*, *supra* at 63 (explaining that, "because the hospital did not withdraw [the appellant's] blood at the direction of [the police] the search did not implicate [the appellant's] Fourth Amendment rights." Instead, "the hospital withdraw [the appellant's] blood on its own initiative for its own purposes."). As such, in the absence of state action (or a demonstration thereof), the earliest possible

Sergeant Farren and Lieutenant Lutz's testimony at the suppression hearing bolsters this conclusion as both officers admitted that the police could have obtained a warrant before asking that chemical tests be performed on Appellant's blood. *See* N.T. Suppression Hearing, 12/21/15, at 65-66 and 83. Therefore, in view of the foregoing circumstances, we conclude that no exigency permitted the warrantless search in this case and, as such, the trial court erred in denying Appellant's motion to suppress.

We note that, initially, the trial court denied suppression based upon a finding of exigent circumstances. Upon review, it is apparent that the trial court originally inferred that an exigency existed because the requirements of 75 Pa.C.S.A. § 3755(a) were met. Indeed, the court explained its reasoning as follows:

> Here, there was an accident scene involving the parties to the accident, emergency [personnel], and the investigators. As recounted above, [Lieutenant] Lutz dispatched [Sergeant] Farren to the hospital to obtain blood from [Appellant] after gathering enough information at the scene to form probable cause [that Appellant was DUI]. [T]he officers [also] had to process an accident scene and [Appellant was] transported to a hospital. The exigency [Lieutenant] Lutz felt is evident in his testimony when he stated, "I instructed [Sergeant] Farren, who was reporting on duty, that **as soon as he came on duty** to **jump** in his car and respond to [] York Hospital and request a legal, a BAC for [Appellant]." [] N.T., [Preliminary Hearing,] 4/29/15, at 47 [emphasis in original]. Though [Lieutenant] Lutz's subjective feeling of exigency carries no weight, [the court] agree[s] that the circumstances warranted it.

---

governmental search occurred when Sergeant Farren requested that Appellant's blood sample be submitted for chemical testing.

Metabolization of alcohol is not, in and of itself, enough to find exigency; however, [the court] believe[d] that investigators' fears vis-à-vis metabolization are enough to find exigency when the officers were delayed by needs more pressing tha[n] obtaining [Appellant's] BAC—namely, attending to victims and processing the scene of death.

***

[Thus, Appellant's] request to suppress the results from the blood draw in this case for lack of a warrant is denied.

Trial Court Opinion, 4/27/16, at 10-11.

In its 1925(a) opinion, however, the court explained:

The trial court based its denial of suppression of the blood test results upon its finding of exigent circumstance[s]. Upon further review, the trial court believes it erred [in denying suppression.] While the Newberry Township Police Department was preoccupied with the hectic nature of a train wreck, [Sergeant] Farren arrived at York Hospital to request a blood test. When he arrived, York Hospital had already conducted a [blood draw]. All [Sergeant] Farren did was [] follow the procedure under [75 Pa.C.S.A. § 3755(a)] and instruct the hospital staff to transfer the blood samples to NMS [laboratory] in Willow Grove.

When the trial court denied [] suppression, it incorrectly viewed the totality of the circumstances and gave too much weight to the preoccupied police force. The trial court now believes that there w[ere] not urgent and compelling reasons [that prevented Sergeant Farren from leaving the hospital to procure] a warrant before returning to have the blood samples transferred to NMS [laboratory]. Because of this, exigent circumstances did not exist[.]

Trial Court Opinion, 4/13/18, at 12-13.

As detailed above, we agree with the trial court's statement in its 1925(a) opinion that no exigency existed to justify the warrantless search. Thus, the trial court should have suppressed Appellant's blood test results. As

such, we must vacate Appellant's judgment of sentence, reverse the trial court's order denying suppression, and remand for a new trial.[19] *Commonwealth v. Krenzel*, 209 A.3d 1024, 1032 (Pa. Super. 2019) (where trial court erred in denying suppression, order denying suppression should be reversed, appellant's judgment of sentence should be vacated, and case should be remanded for a new trial); *Commonwealth v. Boyd Chisholm*, 198 A.3d 407, 418 (Pa. Super. 2018) (same).

Judgment of sentence vacated.  Order denying suppression reversed. Case remanded for new trial.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/11/2020

---

[19] Due to our disposition, we need not address Appellant's remaining appellate issues.